# Jenkins *v.* The State.

### *Indictment for Murder.*

1. *To what witness may testify.*—A witness may testify that the defendant, in attempting to snatch the hat of the deceased from his head, "appeared like he was mad with him."

2. *General objection to evidence partly admissible.*—An objection to evidence, part of which is admissible, may be overruled entirely, since the court is not required to separate the illegal evidence from that which is legal.

3. *Charge as to inference of malice from use of deadly weapon; explanatory charge.*—A charge instructing the jury that, "in a case of homicide, the law presumes malice from the use of a deadly weapon, and casts on the defendant the *onus* of repelling the presumption, unless the evidence which proves the killing shows also that it was perpetrated without malice," asserts a correct legal proposition, and does not assume, as fact, that the weapon used in the particular case was a deadly weapon; and if the defendant feared that the jury might so construe it, he might protect himself by asking an explanatory charge.

4. *Charges refused, but not marked with name of presiding judge; when exception is necessary.*—If the failure of the presiding judge to sign his name to the word *refused*, when written on a charge asked, can in any case be a reversible error, his attention must be called to the omission, and an exception reserved to his refusal to supply it.

5. *Homicide by misadventure, in struggle begun by assault on part of defendant.*—Where the defendant, while playing a game of chance with the deceased, and having an open knife in his hand, disputed with deceased about a nickel, and attempted to snatch his hat from his head; and during the struggle which ensued between them, the deceased was cut on the head with the knife, but without intention on the part of the defendant, and died from the effects of the wound; although the de-

fendant, on these facts, would not be guilty of murder, he can not claim an acquittal, since his original assault was illegal.

From the City Court of Mobile.

Tried before the Hon. O. J. Semmes.

The defendant in this case, Preston Jenkins, was indicted for the murder of Andrew Silas, "by cutting him with a knife;" pleaded not guilty to the indictment, was convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for the term of ten years. On the trial, as appears from the bill of exceptions, it was proved that the deceased was cut on the head, by a knife in the hands of the defendant, during a struggle between them on the 7th August, 1886, at the house of one Ida Johnson, a prostitute in the city of Mobile, while they were engaged "in playing *crups*, a game of chance played with dice;" and that he died, about three weeks afterwards, from lock-jaw superinduced by the wound, as the attending physician testified. As to the circumstances attending the difficulty, there was no material discrepancy in the testimony of the several witnesses. It appeared that, while the deceased and the defendant were playing against each other, the deceased put up a dime, intending to stake a nickel, while the defendant also put up a nickel, or a "beer-check, which looked very much like a nickel," and the deceased took up this coin (or check) as change for his dime. In a subsequent game, the deceased put up this check (or *a* beer-check) as a nickel, and when his attention was called to the fact that it was not a nickel, he insisted that the defendant should replace it with a nickel; which the defendant refusing to do, the deceased picked up a nickel which the defendant had placed on the table. Some words of dispute then passed between them, when the defendant attempted to snatch the hat of the deceased from his head; and a struggle then ensued between them, in which the deceased held the hands of the defendant above his own head, and was cut on the head by a knife in the hands of the defendant. After they were separated, and sat down again at their game, as one of the witnesses for the prosecution testified, "the defendant begged pardon of the deceased, but the deceased would not grant it." Some of the witnesses for the State testified, that the defendant pulled out and opened his knife, "which was a common pocket-knife with a blade two or three inches long," just as he attempted to snatch the defendant's hat; but the defendant testified, in his own behalf, that he had his knife in his hand at the time, and was cutting some tobacco. The policeman who

was on duty in the neighborhood at the time, and who, being aroused by the noise, came in and arrested the defendant, testified that the defendant, after witness came in, cursed the deceased, and said he was sorry he had not killed him; but other witnesses, also present at the time, contradicted him as to these declarations. One of the witnesses for the prosecution, who was present at the time of the difficulty, and who testified that the defendant "took his knife out of his pocket, open, and grabbed at the hat of the deceased," was asked by the prosecuting attorney, "What was his appearance at that time?" to which he answered: "He appeared like he was mad with Silas for snatching his nickel up." The defendant objected to this question and answer each, and being asked by the court, "Is the motion to rule out the whole answer?" answered that it was; and he duly excepted to the overruling of each of his objections.

The court charged the jury in writing, at the instance of the State, as follows: "In a case of homicide, the law presumes malice from the use of a deadly weapon, and casts on the defendant the *onus* of repelling the presumption, unless the evidence which proves the killing shows also that it was perpetrated without malice; and whenever malice is shown, and is unrebutted by the circumstances of the killing, or by other facts in evidence, there can be no conviction for any less degree of homicide than murder." The defendant excepted to this entire charge, and also to the first part thereof.

A charge was asked by the State, in these words: "If a deadly weapon is used, the law infers an intent to kill, or to do grievous bodily harm; and if the circumstances do not show excuse, justification, or immediate provocation, the presumption of malice is conclusively drawn; and a deadly weapon is not one from which a blow could ordinarily produce death, but one from which, as it was used in the particular case, death would probably result." The court refused this charge, and wrote the word *refused* on it; but the name of the presiding judge was not written beneath the word, and the charge was taken by the jury, with the other charges, on their retirement; and the record does not show that any exception was reserved to this by the defendant, or that the attention of the court was called to the omission.

The defendant requested a charge in writing, in these words: "If the jury believe, from the evidence, that the deceased took money which the defendant had bet on a game of *craps*, without having won it in the game; and that

thereupon the defendant, having a knife in his hand, but not intending to use it, grabbed the hat of the deceased, to induce him to return the money; and that the deceased grabbed the defendant's hands; and that the defendant, in trying to jerk away from the deceased, accidentally cut him, and that the deceased died from the wound so inflicted; they ought to find the defendant not guilty." The court refused this charge, and the defendant excepted.

GREGORY L. SMITH, for the appellant, cited *Nat. Bank v. Jeffries*, 73 Ala. 173; *Herring v. Skaggs*, 62 Ala. 180; *Wilson v. State*, 73 Ala. 532; *Whizenant v. State*, 71 Ala. 384: *Steinau v. Marx*, 58 Ala. 608; *McAdory v. State*, 59 Ala. 92; *Gassenheimer v. State*, 52 Ala. 317; *Johnson v. State*, 17 Ala. 618; *Miller v. Hampton*, 37 Ala. 342; *Little v. State*, 58 Ala. 265; *Winslow v. State*, 76 Ala. 42.

THOS. N. McCLELLAN, Attorney-General, for the State, cited *Campbell v. State*, 23 Ala. 44; *Carney v. State*, 79 Ala. 17; *Martin v. State*, 77 Ala. 5; *Sylvester v. State*, 71 Ala. 17; *Hampton v. State*, 45 Ala. 85.

STONE, C. J.—The witness, William Smith, testified, against the objection and exception of defendant, that "He (the defendant) appeared like he was mad with Silas (the deceased) for snatching his nickel up." On being interrogated by the court, as to whether the objection went to the entire answer, counsel replied that it did. We think there was no error in allowing the witness to testify that the accused appeared to be mad. Anger, or bad temper, can be proved in no other way.—*Carney v. State*, 79 Ala. 14. The objection being general to the whole reply, the court committed no error in overruling it, even if part of it was objectionable.—3 Brick. Dig. 443, § 570.

The testimony tends to show that the knife, with which the mortal wound was inflicted, was from two to three inches long in the blade. The objection is urged before us, that in giving the charge requested by the prosecution, the court assumed as fact that this was a deadly weapon, when its deadly character should have been left to the jury. We do not so understand the charge. It did not undertake to define what would be a deadly weapon. It simply declared the rule of law applicable to homicide caused by the use of a deadly weapon, and declared it correctly. We can not suppose, in the absence of a showing to the contrary, that the City Court did not instruct the jury as to what would constitute a deadly weapon. If there was ground for ap-

[Johnson v. The State.]

prehending that the charge would or might lead the jury to the belief that the court intended to be understood as affirming, as matter of law, that the knife employed in this case was, *per se*, deadly, this would present a proper subject for an explanatory charge.—3 Brick. Dig. 113, §§ 107, 110.

We need not inquire, whether the failure of the presiding judge to sign his name to the charge which he marked "refused," could, under any circumstances, become a reversible error. Presumptively, the omission was an oversight. To be available, the attention of the court should have been called to it; and if the omission was not then supplied, the question should be raised by an exception reserved.— *Tyree v. Parham*, 66 Ala. 424.

The charge asked by defendant was rightly refused. Under the testimony most favorable to him, the defendant commenced the encounter, by attempting to snatch the hat of deceased from his head, in a rude or angry manner. This was an assault,—a misdemeanor; and if death ensued, although by misadventure and not likely to ensue, the defendant would not be guiltless. He would, ordinarily, be guilty of manslaughter in the second degree, under the circumstances as detailed by himself.—*McManus v. State*, 36 Ala. 285; *Ex parte Nettles*, 58 Ala. 268; *Mitchell v. State*, 60 Ala. 26; *Judge v. State*, 58 Ala. 406; *Ex parte Warwick*, 73 Ala. 57. The hypothesis of the charge, while, if believed, it may have required defendant's acquittal of murder, did not, when interpreted in connection with the testimony, demand his entire acquittal.

Affirmed.