# Birmingham Railway & Electric Company *v*. Franscomb.

*Action for Damages for Injury by Negligence.*

1. *Evidence; the word "seemed" equivalent to "appeared to be."* The statement of a witness speaking of the physical condition of another that he "seemed to be very weak" was proper; it was but the equivalent of the expression that "he appeared to be very weak," and consequently was nothing more than the statement of a fact, or, at most a conclusion of fact. If the adverse party wished to know the foundation upon which the witness rested his conclusion the facts should have been drawn out on cross-examination.

2. *Same; statement of witness what is inadmissible.*—The expression "I considered that a signal for me to come ahead," used by a motorman of an electric car as a witness in speaking of the action of the driver of a wagon with which his car had collided, was inadmissible; it was a statement of the mental operation of the witness—his opinion or belief.

3. *Charge; affirmative when proper.*—Where the complaint alleges wanton injury by the collision of an electric car with plaintiff's wagon and the evidence tends to show without conflict that at the time of the collision the motorman was using all the means at his command to prevent it, and had done nothing to indicate a reckless disregard of impending peril, the affirmative charge should be given for the defendant.

APPEAL from Birmingham City Court.

Tried before Hon. H. A. SHARPE.

This suit was brought by David Franscomb against the Birmingham Railway & Electric Company for damages caused by a collision of the defendant's car with

the wagon of plaintiff. The complaint in different counts charged negligence and wantonness. The important facts are fully ‘stated in the opinion. The evidence showed that just before the collision the plaintiff was driving very near the track and going in the same direction in which the car was moving, and the motorman of the car was operating the same carefully, having on his brakes; but the defendant turned his wagon from the track so as to give more space between it and the track. The motorman then released the brakes and increased the speed of the car. It was this movement of the wagon which the motorman "considered that a signal for me to come ahead." The court gave the affirmative charge to the defendant on the counts averring negligence, but refused it on the count averring wantonness.

WALKER, PORTER & WALKER for appellant.—(1). The statement of the motorman was a collective fact, and should have been admitted.—*Woodstock Iron Co. v. Roberts*, 87 Ala. 437; ‘82 Ala. 139; 17 Ala. 290. (2). Appellant was entitled to affirmative charge.—*Ga. Pac. R. R. Co. v. Lee*, 92 Ala. 273; *L. & N. R. R. Co. v. Webb*, 97 Ala. 308; *H. A. & B. R. R. Co. v. Sampson*, 91 Ala 97 Ala. 308; *H. A. & B. R. R. Co. v. Sampson*, 91 Ala. 560; *L. & N. R. R. Co. v. Markee*, 103 Ala. 160.

KERR & HALEY, *contra.*—(1). The expression, "he seemed weak" admissible.—*S. & N. Ala. R. R. Co. v. McLendon*, 63 Ala. 270; *Miller v. State*, 19 So. Rep. 39; *Jenkins v. State*, 82 Ala. —. (2). The motorman's expression about the signal properly excluded.—*A. G. S. R. R. Co. v. Burgess; H. Ave. & Belt. R. R. Co. v. Swepe*, 22 So. Rep. 179. (3). Affirmative charge for defendant properly given.—*M. & C. R. R. Co. v. Martin*, 23 So. Rep. 231; *A. G. S. R. R. Co. v. Moore*, 22 So. Rep. 900.

DOWDELL, J.—Counsel for appellant, in their brief, expressly decline to discuss the 2d, 3d, 4th, 5th and 6th assignments of error, all of which relate to rulings on the evidence, and we will therefore not consider the same, accepting their refusal to discuss these assignments as a waiver of the same.

[Birmingham Railway & Electric Co. v. Franscomb.]

The first assignment is insisted upon by appellant. The witness Dyer, in speaking of plaintiff's physical condition while in the hospital, stated that, "he semed to be very weak." This was objected to by the defendant, and motion was made to exclude the same which was overruled. This was but an equivalent of the expression, that, "he appeared to be very weak," and consequently was nothing more than the statement of a fact, or, at most, a conclusion of fact. If the adverse party wished to know the foundation upon which the witness rested his conclusion, the facts could have been drawn out upon a cross examination. This ruling of the court was without error.—*S. & N. R. R. Co. v. McClendon*, 63 Ala. 270; *Jenkins v. The State*, 82 Ala. 25; *Thornton v. The State*, 113 Ala. 43.

Neither did the court err in excluding, on the motion of appellee, the statement by the witness Vineyard in regard to the action of the appellee in driving his wagon that, "I considered that a signal for me to come ahead." This was not the statement of a collective fact, as contended by counsel for appellant, but a statement of a mental operation of the witness—the opinion or belief of the witness. The proper test was not what the witness considered as a signal to "come ahead," but whether he had a right to consider the conduct and action of appellee as a signal, and this was a fact for the jury to determine from the other facts in evidence.—*McCormick & Richardson v. Joseph & Anderson*, 77 Ala. 276.

The real question involved in this case, as conceded by the counsel in argument, is that of wantonness *vel non*.

In behalf of the plaintiff but two witnesses were examined who had any knowledge whatever of the facts which constituted the wantonness as alleged in the third count of the complaint. The plaintiff was one of these witnesses and H. K. White the other. The plaintiff never saw the car that struck him until he recovered his consciousness after his injury, and therefore his evidence has no tendency to show whether the conduct of the motorman was the result of simple negligence or wantonness. The testimony of White tends to

show that the motorman, just before the collision, was applying the brakes to the car, and therefore trying to prevent a collision. This witness said: "As the car got into Avenue I, which is quite a narrow street, not more than 50 or 60 feet in width, the motorman appeared to be stopping the car from the noise I heard. I heard a grating noise, as if the motorman was putting on his brakes, and the next instant he ran into the wagon. The motorman was attempting to put on his brakes as I remember before he ran into the wagon, but I did not se the wagon then and not until the instant the car struck it. I heard the noise of the turning of the brake about the time he got to the northern line of Humboldt Avenue, or just a little before; I think he began to put on his brakes before he got to that side." And while this witness says that "the car was running very fast down the hill," he adds, "it could have run faster." According to the testimony of this witness, the motorman began to apply the brakes something more than one hundred feet from where the collision occurred. The testimony of this witness did not tend to show that the motorman was guilty of a reckless disregard of plaintiff's safety, nor of such misconduct as is the moral equivalent of an intention on his part to injure the plaintiff, nor did the statement of this witness tend to show that the motorman consciously failed to use preventive effort to save the appellee from harm when the peril of the appellee became manifest to the motorman: on the contrary, the tendency of the evidence of this witness showed an effort on the part of the motorman to prevent injury. The testimony of the defendant's witnesses, to-wit, Vineyard, the motorman, Leedy, who was waiting to take passage on the car, Neighbors, Randall, Coffin, Wilcox and Ferguson, all pasengers on the car, shows clearly that the car was proceeding down the hill slowly, carefully and without negligence; that the car was being held in check by the brakes; that the gong was being rung all the while; that the appellee, plaintiff, was driving his wagon so close to the track as to be in the way of the car; that just after crossing Humboldt Avenue the appellee drove his wagon to the right, away from the track, giving am-

ple room for the car to pass; that when the appellee drove out of the way of the car, the car was very near the wagon; that the motorman then released his brakes partially and allowed the car to run a little faster with the view of passing the wagon; that the appellee then suddenly pulled the wagon in close to the track and in the way of the car, and that the front end of the car cleared the rear end of the wagon and collided with the front part of the wagon which had been pulled in closer to the track by the appellee; that as soon as the appellee pulled his wagon in close to the track, the motorman reversed the current and did all that he had time to do to prevent the collision. The evidence for the defendant further shows that at the time the appellee turned his wagon from the track, thereby giving the car clearance room to pass, the speed of the car had been reduced to about 2½ to 3 miles to the hour, or about as fast as a man ordinarily walks, thus being under control. When the wagon turned away from the track, the car was a short distance behind it, and at the time the motorman released the brakes for the purpose of passing the wagon, clearance room having been given, it was not unreasonable for him to conclude that he could pass with safety, nor was it reasonable for him to suppose or conclude that the wagon, after having been turned away from the track, would again be turned upon the track before he had passed the same. We do not think the evidence afforded a reasonable inference of guilt of wantonness on the part of defendant's motorman, and on this question the defendant was entitled to the general charge, as requested, under the authorities of *Birmingham R'y & Elec. Co. v. Bowers,* 110 Ala. 232; *Ga. Pac. R. R. Co. v. Lee,* 92 Ala. 272; *L. & N. R. R. Co. v. Webb,* 97 Ala. 308; *H. A. & B. R. R. Co. v. Sampson,* 91 Ala. 560; *K. C. M. & B. R. R. Co. v. Crocker,* 95 Ala. 412; *L. & N. R. R. Co. v. Markee,* 103 Ala. 160.

The judgment of the Circuit Court is reversed and the cause remanded.