# Woodward Iron Co. *v.* Spencer.

*Injury to Minor Employee.*

(Decided October 14, 1915.  69 South. 902.)

1. *Evidence; Hearsay.*—A question whether a witness had ever heard of anybody having an accident of that kind before or since, called for hearsay testimony, and was objectionable.

2. *Witnesses; Examination; Form.*—A question objected to, and the ruling of the court thereon must be tested by its form in connection with the statement of counsel as to what is expected to be

[Woodward Iron Co. v. Spencer.]

elicited from the witness, and if the question is improper in form, the court will not be put in error for excluding it by statement of counsel.

3. *Witness; Competency; Discretion.*—The competency of a witness, whether an expert or not, to give an opinion as to sanity or insanity, is a question for the court, not reviewable unless clearly erroneous.

4. *Evidence; Sanity; Observation.*—A witness shown to be intimate with the person whose sanity or insanity is in issue, and to have had opportunity for observation sufficient to enable him to form a correct judgment as to such person's mental condition, may not only testify to the facts, but may give an opinion based upon his personal knowledge, observation, acquaintance and experience with such person.

5. *Same.*—The question of sanity may be shown by opinions based on a mere negation of unnatural or peculiar conduct, without a specification of facts, hence a witness shown to have known the person inquired about may state that he has never seen any indication or evidence of insanity.

6. *Same.*—The mother with whom the person had lived from childhood, and who had observed him daily, might testify that he was a bright, smart boy of good intelligence, and might state his expressions of pain and suffering from the injury, describe the injury, the impairment of his hearing, and the change in his mental condition, along with the facts on which she based her statement that there was a change.

7. *Trial; Reception of Evidence; Motion to Exclude.*—The court will not be put in error for overruling a motion to exclude testimony that a person had a good mind until he got hurt, but "He hasn't any mind at all now," where the motion was to exclude the whole answer, and not merely the part expressing the opinion that he had no mind then.

8. *Witnesses; Examination; Demonstrative.*—Where the plaintiff took the stand to exhibit the nature and extent of his injuries while in defendant's employ, or for other evidential purposes, he could have been subjected to a proper cross-examination.

9. *Evidence; Pain; Statement as to.*—Where the uncle of the injured servant had been well acquainted with him before and after the accident, and had known him all his life, his testimony that after the injury he heard plaintiff complain that his head and back pained him, was competent.

10. *Same; Mental Condition; Injury.*—Where the issue was as to defendant's liability for injury, and its extent, testimony of a witness who had been well acquainted with plaintiff, that plaintiff had a good mind before he got hurt, but that afterwards he was a little different; that his mind was not as good as it was before; that there was some difference in his mind and memory, and the statement of his mother that plaintiff had been a bright, smart, intelligent boy before he was injured, not stating the facts on which such testimony was based, were admissible, not as a statement of opinion as to the existence of insanity, but as a conclusion of a fact of his changed condition after the injury.

[Woodward Iron Co. v. Spencer.]

APPEAL from Bessemer City Court.

Heard before Hon. J. C. B. GWIN.

Action by Jim Spencer, by next friend, against the Woodward Iron Company for damages for injury while in their employment. Judgment for plaintiff, and defendant appeals. Affirmed.

The case was finally submitted to the jury on count 8 of the complaint, which alleges that plaintiff was in the service or employment of defendant, and in the course of his duties it became and was necessary for him to sprag cars so as to stop them after they were turned loose at the mouth of the mine, and that defendant had provided a plank which was laid alongside its tracks for its servants and agents to stand on while spragging said car, and that while engaged in the discharge of his duty he was run upon by one of said cars and struck and so mashed and crushed that his leg had to be amputated. The negligence alleged is a defect in the ways, works, plant, or machinery, in that the plank on which plaintiff stood to sprag said car on said occasion was old and worn and not suited for the purposes for which it was constructed and used, and that it had been rendered slippery to approach said track from an accumulation of oil and grease, and was a dangerous place on which to stand while spragging cars. The other matters sufficiently appear from the opinion.

CABANISS & BOWIE, for appellant.

MATHEWS & MATHEWS, and BEDDOW & OBERDORFER, for appellee.

THOMAS, J.—The assignments of error are based on the rulings of the court on evidence. The bill of exceptions does not set out the testimony in full. The recital

thereof, in this connection, is: "The foregoing is all of the testimony and tendencies of the testimony that are necessary to be here stated to enable the court to pass upon the exceptions reserved as herein above set forth." —Rule 32 of Circuit Court Practice, page 1526 of the Code of 1907, and the amendment thereof, adopted June 23, 1913, 175 Ala. xxi.

(1, 2) The witness Rockett, examined by the defendant, was asked: "Had you ever heard of anybody having an accident of this kind before or since that time? I mean to say, anybody having his foot slip from the plank?"

A question objected to, and the court's ruling thereon, must be tested by its form in connection with the statement of counsel to the court as to what was expected to be proved by the witness. If the question is improper in form, the statement of counsel will not put the court in error. This question called for hearsay testimony. The question, if in proper form, does not, however, come within the rule declared in *Southern Ry. Co. v. Lefan,* 70 South. 249.

The objections to question propounded to witnesses Sarah Spencer and Jim Eastman make it necessary to consider the law on the question of a nonexpert giving opinion evidence touching sanity or insanity. The great weight of general authority is that the opinions of ordinary witnesses is admissible on the question of the sanity or the insanity of a person, upon the obvious ground that it is often impossible for a witness to adequately describe to the court or jury the actions, looks, and symptoms, which form the basis for determining the question.—Jones on Ev. (2d Ed.) § 364, and the many authorities cited in support of the text; 3 Wigmore on Ev. §§ 1933-1938. The opinions of nonprofessional wit-

nesses, however, are not admissible to prove insanity unless such opinions are based upon personal knowledge and observation; and it is generally held that before or after giving an opinion the witness must state the facts and circumstances on which the opinion is based.— *Hardy v. Merrill,* 56 N. H. 227, 22 Am. Rep. 441; *Appleby v. Brock,* 76 Mo. 314; *Ellis v. State,* 33 Tex. Cr. R. R. 86, 24 S. W. 894; *Sharp v. K. C. Ry. Co.,* 114 Mo. 94, 20 S. W. 93; *Lassas v. McCarty,* 47 Or. 474, 84 Pac. 76; *Chicago Union Traction Co. v. Lawrence,* 211 Ill. 373, 71 N. E. 1024; *Boorman v. N. R. Ass'n,* 90 Wis. 144, 62 N. W. 924; *Hempton v. State,* 111 Wis. 127, 86 N. W. 596. No general rule can be laid down as to what should be deemed a sufficient opportunity for observation.—*Clary v. Clary,* 24 N. C. 78; *McClackey v. State,* 5 Tex. App. 320; *Taylor v. Com.,* 109 Pa. 262; *Chase v. Winans,* 59 Md. 475; *Wood v. State,* 58 Miss. 741; *Wise v. Foote,* 81 Ky. 10; *Kempf v. Koppa,* 74 Kan. 153, 85 Pac. 806; *Stutsman v. Sharpless,* 125 Iowa 335, 101 N. W. 105.

(3) The question of the competency of a witness, whether expert or nonexpert, to give an opinion as to the sanity or insanity of the party inquired of, is a question for the court. The court's decision as to competency will not be revised unless it clearly appears to have been erroneous.—*Odom v. State,* 174 Ala. 8, 56 South. 913; *Johnston v. Johnston,* 174 Ala. 220, 225, 57 South. 450; *Parrish v. State,* 139 Ala. 16, 42, 36 South. 1012; *Braham's Case,* 143 Ala. 28-41, 38 South. 919; *Ala. Con. Coal & I. Co. v. Heald,* 168 Ala. 644, 53 South. 162; *Ford v. State,* 71 Ala. 385; *People v. McCarthy,* 115 Cal. 255, 46 Pac. 1073, 38 L. R. A. 738, notes.

In *Norris v. State,* 16 Ala. 776, 778, 779, Mr. Justice Chilton said: "But upon the question of sanity or in-

19—194

sanity, the exception seems to extend beyond the opinion of medical men, and to allow the opinion of such witnesses, as from long intimacy, or familiar and frequent intercourse with the party alleged to be insane, peculiarly fit them to judge of his mental condition. Such opinion, however, must be preceded by the facts and circumstances. * * * A person may be insane —he may carry along with him such marked and unmistakable indications of a diseased intellect as to satisfy every one familiar with his habits and peculiarities that he is insane, yet perhaps but few persons, without giving an opinion, could so describe the pathological condition of his mind as to communicate to a jury a distinct idea of his true condition. Shall the witness be confined to facts alone? Does not even a casual observer of mental phenomena fully recognize the impossibility of communicating to another the facts, and almost numberless minute circumstances, indicating a morbid action of the brain, and consequent mental aberration, the main force of which may consist in some peculiar characteristic, which none but the observer can fully appreciate? * * * How then shall they be placed in possession of those mysterious and indescribable phases which insanity wears, which, though they make a correct and vivid impression upon the mind of the observer, yet lose much of their force by an attempted description? Must the prisoner lose the benefit of such testimony altogether, or shall the witness be required to furnish, as well as he may, a pantomimic delineation of the wild look, the vacant stare, the unnatural gait, the distorted countenance, the idiotic laugh, as well as the numberless caprices and sudden and apparently causeless exhibitions of joy and sorrow? Were such the law the force of the testimony would be made to depend upon the powers of the witness for imitation."

[Woodward Iron Co. v. Spencer.]

(4) It is, then, the rule in this state that a witness, shown to be intimate with the person whose sanity or insanity is the subject of inquiry, and to have had opportunity for observation sufficient to enable him to form a correct judgment of the mental condition of the party in question, may not only depose to facts, but give an opinion as to whether the person under inquiry was sane or not, at the time to which the inquiry is directed. Such an opinion of the nonexpert must be based upon his own personal knowledge, observations, acquaintance, and experience with the individual inquired about.—*Pritchard v. Fowler*, 171 Ala. 662-669, 55 South. 157; *Johnston v. Johnston*, 174 Ala. 226, 57 South. 450; *Parrish v. State*, 139 Ala. 42, 36 South. 1012; *Burney v. Torrey*, 100 Ala. 157, 173, 14 South. 685, 46 Am. St. Rep. 33; *Norris v. State, supra; Roberts v. Trawick*, 13 Ala. 68-84; *Melvin v. Murphy*, 184 Ala. 188, 63 South. 546; *Odom v. State, supra*.

(5) The question of sanity may be shown by opinions based on a mere negation of unnatural or peculiar conduct, without a specification of facts. It is competent for such a witness, shown to have known the person inquired about, to testify that he had never seen any indication or evidence of insanity.—*Caddell v. State*, 129 Ala. 57, 30 South. 76; *Dominick v. Randolph*, 124 Ala. 557, 27 South. 481; *Yarbrough v. State*, 105 Ala. 43, 16 South. 758; *Ford v. State*, 71 Ala. 387; *Parsons v. State*, 81 Ala. 577, 2 South. 854, 60 Am. Rep. 193.

(6) The witness Sarah Spencer testified that she was the mother of appellee; that "from his childhood to the present time he lived with me [witness], and at the time of the accident;" that she "observed him daily;" that before the accident he was a "bright, smart boy and had good intelligence." Plaintiff's counsel then asked: "Have

you observed any difference from associating with him, about his mind and memory, since this accident happened to him and before?",

Defendant objected, on the ground that the question called for an "unauthorized conclusion of the witness," and duly excepted to the ruling of the court. The witness answered: "He had a good mind before he got hurt, but now— Q. And what now? A. He had a good mind until he got hurt, but he hasn't got any mind now. Q. How does he manifest it, if you can explain to the jury; since this injury what difference do you see, if any? A. He has a deafness, and he can't hear good, and he hasn't got real good mind now. I talk with my son sometimes, not much, and when I talk with him he does not talk connectedly along; he don't talk like he used to. His mind ain't as good as it used to be."

The witness, having shown constant opportunity to observe, and that she did daily observe, the plaintiff, who lived with her all the time, was properly permitted to give in evidence his expressions of pain and suffering from the injury, to describe the injury, and the impairment of his hearing, and to state the facts on which she based her statement that there was a change in plaintiff's mental condition after the injury, and to state what that change was. She had qualified as a nonexpert, and the court properly permitted her to answer the several questions propounded, on which the assignments of error are based.—*Ford v. State, supra; Parsons v. State, supra; Parrish v. State, supra; Caddell v. State, supra; Dominick v. Randolph, supra; Burney v. Torrey, supra; Florey's Ex'rs v. Florey,* 24 Ala. 247.

(7) Even if the witness had not qualified by giving the facts (which we do not admit), there is a further reason why the court may not be put in error in over-

ruling plaintiff's objection, and motion to exclude the answer elecited, "He had a good mind until he got hurt, but he hasn't got any mind at all now," and that is, that the motion was to exclude the whole answer, and not merely that part that amounted to the expression of an opinion that he "hasn't any mind at all now."

The bill of exceptions recites that: "Plaintiff was brought before the jury, to show the place where the leg was amputated. He was not examined as a witness. The only evidence as to plaintiff's mental condition, and the only evidence as to why plaintiff did not take the stand as a witness, was the evidence, set out, of Jim Eastman and Sarah Spencer; but several witnesses for the defendant testified that they had not observed any change in the plaintiff's mental condition since the accident."

The cause was submitted on the eighth count, claiming damages for an injury which caused plaintiff's leg to be amputated above the knee, with the proximate consequence that he was caused to suffer, and would likely continue throughout his natural life to suffer, great mental and physical pain and anguish and mental disquietude, and that he was permanently injured.

(8) When plaintiff took the stand, as he did (*Twitty v. State,* 168 Ala. 67, 53 South. 308; 1 Greenl. Ev. [16th Ed.] § 13f), to exhibit the nature and extent of his injuries or for other evidential purposes, he may have been subject to a proper cross-examination (*B. R., L. & P. Co. v. Rutledge,* 142 Ala. 195, 203, 39 South. 338; *Bettis v. State,* 160 Ala. 3, 49 South. 781).

(9) The witness Jim Eastman stated that he was the uncle of plaintiff, and was well acquainted with him before and after the accident, and had known him ever since he was born; that after the injury he heard plain-

tiff complain of his head and back paining him. This was competent evidence.—*B. R., L. & P. Co. v. Rutledge, supra; W. U. Tel. Co. v. Henderson,* 89 Ala. 510, 7 South. 419, 18 Am. St. Rep. 148; *B'ham Union R. Co. v. Hale,* 90 Ala. 8, 10, 11, 8 South. 142, 24 Am. St. Rep. 748; *Eckles v. Bates,* 26 Ala. 655.

(10) There was no error in permitting the witness to say that plaintiff had a "good mind before he got hurt;" that since his injury witness saw a "little difference;" that plaintiff's mind "was not as good as it was before;" that witness could see some difference in plaintiff's "mind and memory" since his injury.

Appellant, in brief of counsel, concludes the discussion of the evidence of this witness with the statement: "The court was in error in allowing the witness to state that the plaintiff's recollection was not as good as it was before, since this statement was only a conclusion of the witness and not the statement of any fact."

The position of counsel is untenable. The declarations objected to were of the fact of a changed condition of the plaintiff by reason of physical injury, being statements touching the degree of intelligence as affected thereby. The replies of the witnesses were not statements of opinion as to the existence of insanity, but were conclusions of fact.

The issue was liability vel non for personal injury, and, if liability, its extent. Thus insanity was not the issue being tried, but the extent of physical injury that had not only affected the body of the plantiff, but somewhat impaired his memory and mind.

Much of appellant's brief treats of cases where witnesses were required to give opinions as to the mental capacity of a given person to do, or to refrain from doing, a certain act. Such is not the question before

us. The question in hand is merely that of the extent of plaintiff's injury; whether or not, regardless of degree, any of plaintiff's mental faculties, such as memory, had been impaired by reason of the wrong complained of.

In the case of *Heddles v. Chicago & Northwestern R. Co.*, 77 Wis. 228, 234, 46 N. W. 115, 117, 20 Am. St. Rep. 106-112, it is said: "The seventh error assigned was the overruling of an objection to the following question asked of the father of the plaintiff: 'What was the boy's temper before he was injured?' The answer was: 'He was of bright and cheerful temper. Now he is very irritable, and, if anything excites him, he seems to be uncontrollable.' It would seem that the question was a very proper one, as showing that the boy's mental condition was sound before the injury; and we are also of the opinion that the answer as to his mental condition after the injury, although not responsive to the question, was admissible. It would seem that, if an injury caused a permanent mental defect or disease, it would be equally as good ground for the recovery of damages as though a physical defect or a disease was the result."

Their long familiarity with, and continuous observation of, the plaintiff, qualified the mother and the uncle of the plaintiff to testify to the degree of his intelligence before, and the degree after, the injury; their statements in this behalf being conclusions of fact, and not opinion evidence. It was permissible—and not even objected to on the trial—for his mother to state of his former intelligence that he "was a bright, smart boy, of good intelligence," before he got hurt. This was but a conclusion of fact from her long association with and observation of him. The statement touching his intelligence, after the injury, was no less a conclusion of fact, shown

to be based on sufficient association and observation. Degree of intelligence may be stated, without stating the facts or circumstances on which the answer is based, so long as it does not amount to a statement of insanity where that fact is in issue.

In 17 Cyc. p. 86, it is said: "A witness may, after enumerating such as he can of the constituent facts, state the effect on his mind of the numerous phenomena which constitute the impression of appearance, whether of animate or inanimate objects; it being affirmatively shown that the witness had adequate opportunities for observation, that the constituent facts cannot be fully placed before the jury, and that the ultimate fact is relevant to the issue."

Many authorities are cited in support of this text.

In *Brownell v. People,* 38 Mich. 732, it is said: "A witness may state an inference as to the bodily condition in some relevant particular of one person as compared to that of another."

In *Peterson v. Seattle Traction Co.,* 23 Wash. 615, 63 Pac. 539, 53 L. R. A. 586, it is said: "The testimony of a lay witness, the wife and acquaintance of one injured in a collision, that before the accident he was a healthy looking man, a strong laborer, and since then he looked thin and pale, was more quiet in manner, and did not hear so well; that he came home after the accident in an excited condition and complained of pain in his head and back—was not objectionable as being expert opinion evidence."

In *Burton v. State,* 107 Ala. 108, 18 South. 284, it is said: "The court did not err in allowing the witness to testify that he saw the defendant, a short time after the gunshots were heard, which it is supposed resulted in the death of the deceased, and that 'he looked a little

[Woodward Iron Co. v. Spencer.]

paler than usual.' This exception is not insisted on in argument. The theory of the state is, and there is circumstantial evidence tending to bear it out, that the defendant was seen going at a rapid pace from the place where the body of deceased was found, immediately after the firing was heard in that direction, and the witness testified that it was then he saw the defendant, and he 'looked paler than common.' The witness testified to a fact. Whether true or merely imaginary, and what weight, if any, should be given to it, rested purely with the jury. In the case of *Railroad Company v. McLendon*, 63 Ala. 266, and which was reaffirmed in the case of *Burney v. Torrey*, 100 Ala. 157, 14 South. 685 [46 Am. St. Rep. 33], it was held that it was competent for a witness to testify that another 'seemed to be suffering,' that he 'looked bad,' and that the testator was 'childish,' that 'his expression was simple.' That another 'looked paler than common' carried a distinct fact to the minds of the jurors cannot be questioned, and is fairly within the influence of these decisions."

In *South & North Alabama R. Co. v. McLendon*, 63 Ala. 266-277, it was held, touching such expressions in the testimony of witnesses, as that a person "seemed to be suffering during the time,  *  *  *  was not able to return,  *  *  *  was not able to use her arm a large part of the time for several months,  *  *  *  the left wrist of plaintiff looked like the bone had slipped off the joint,  *  *  *  she looked bad,  *  *  *  was disabled, etc."—that all of these, were "but facts, or, at most, conclusions of fact; awkwardly expressed sometimes, it is true; still, we find in them nothing to which a witness may not testify."

In *Jenkins v. State*, 82 Ala. 25, 2 South. 150, it was held that "anger, or bad temper, can be proved in no other way."—*Carney v. State*, 79 Ala. 14.

In *Barker v. Coleman*, 35 Ala. 221-225, it is said: "That the negro was in bad health, diseased, and incapable of doing hard work, were facts, which may have been obvious to the senses of the witness; and the plaintiff should have been permitted to prove those facts, if he could. It was not proposed to ask the witness for an opinion on the subject. The plaintiff's proposition was, not to prove the opinion of the witness, but, as we understand it, to prove the health of the negro, as learned, like the other facts, through the observation of his senses."

In *Clark v. Clark*, 168 Mass. 523, 47 N. E. 510, a lay witness was allowed to testify that a party "failed in mental capacity."

In *White v. State*, 103 Ala. 72, 16 South. 63, a witness was allowed to testify that a witness "talked with his usual intelligence."—Lawson on Expert and Opinion Ev. 473.

In *Reeves v. State*, 96 Ala. 33, 11 South. 296, a witness testified that "the witness was talking mad." And in *Perry v. State*, 87 Ala. 33, 6 South. 425, a witness was allowed to testify that a certain object "looked like it had been struck with a hot iron, and looked scarred," as a conclusion of fact.

In *Birmingham Railway & Electric Co. v. Franscomb*, 124 Ala. 621, 27 South. 508, it was said: "The witness Dyer, in speaking of plaintiff's physical condition while in the hospital, stated that 'he seemed to be very weak.' This was objected to by the defendant, and motion was made to exclude the same, which was overruled. This was but an equivalent of the expression that 'he appeared to be very weak,' and consequently was nothing more than the statement of a fact, or, at most, a conclusion of fact. If the adverse party wished to know

[Woodward Iron Co. v. Spencer.]

the foundation upon which the witness rested his conclusion, the facts could have been drawn out upon a cross-examination. This ruling of the court was without error.—*S. & N. R. R. Co. v. McLendon,* 63 Ala. 270; *Jenkins v. State,* 82 Ala. 25 [2 South. 150]; *Thornton v. State,* 133 Ala. 43 [21 South. 356, 59 Am. St. Rep. 97]."

In the case at bar neither of the witnesses was asked whether the plaintiff was sane or insane. No such issue is presented by the evidence. The value or correctness of the conclusions of fact given by these two witnesses could have been brought out by cross-examination. The defendant had this opportunity for cross-examination of the plaintiff, and introduced evidence tending to rebut the statements of the changed degree of plaintiff's intelligence after the injury.

No rule for the giving of testimony by nonexpert witnesses, in cases where insanity is the issue or is pleaded as a defense for crime, has been violated by the court's rulings on the admission of evidence.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.