(110 So. 137)

SPRINKLE v. ST. LOUIS & S. F. R. CO.
(6 Div. 437.)

(Supreme Court of Alabama. Nov. 4, 1926.)

1. Railroads ⬳384—Trespasser, remaining in close proximity to passing train, after becoming aware of danger of being struck by swinging door, cannot recover for injuries.

Recovery for injuries sustained by plaintiff when struck by swinging door of railroad car is barred by showing that plaintiff, a trespasser on defendant's right of way, saw out-swinging door, and voluntarily remained in such proximity to train that he was in danger of being struck thereby, and was conscious of peril, but negligently remained therein.

2. Railroads ⬳394(7)—Answer alleging that plaintiff, struck by swinging door of train, remained within striking distance after observing door sufficiently alleges contributory negligence.

Answer, alleging that plaintiff, struck by swinging door of railroad car, was near tracks, saw swinging door, but remained within striking distance thereof, sufficiently shows contributory negligence, and objection to answer that it fails to show knowledge by plaintiff of attending peril or consciousness of being within striking distance *held* hypercritical, and without merit.

3. Negligence ⬳66(1).

"Concurrent contributory negligence" is knowledge of specific danger and negligent failure to avoid it.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Concurrent Negligence.]

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Negligence ⬳141(9)—Instruction on subsequent negligence, predicating liability on failure to exercise care after knowledge of peril, held proper without characterizing failure as negligent.**

Instruction on subsequent negligence, predicating liability on fact that defendant's servants knew of impending danger, and failed to exercise due care to avoid injury, *held* proper without characterizing failure to exercise due care as negligent, since such failure is in itself actionable negligence.

**5. Appeal and error ⬳1033(5).**

Plaintiff cannot complain of instruction lacking completeness, where defect is favorable to him.

**6. Negligence ⬳1.**

Charge that elements of actionable negligence are existence of duty to protect plaintiff from injury, failure to perform duty, and injury resulting therefrom, *held* proper.

**7. Trial ⬳256(2).**

If charge is deemed misleading, an explanatory charge should be requested.

**8. Railroads ⬳400(15)—Evidence held to warrant general charge for railroad on count for wanton injury by swinging door of car.**

Evidence as to negligence by plaintiff and railroad in action for injuries to plaintiff, struck by swinging door of railroad car while on railroad right of way, *held* to warrant general affirmative charge for defendant on count for wanton injury.

**9. Railroads ⬳391(1)—Reckless disregard of plaintiff's safety cannot be imputed to brakeman, not shown to have knowledge that plaintiff, near tracks was unconscious of peril.**

Where evidence did not support inference that brakeman knew that plaintiff, standing beside tracks, was unconscious of danger from swinging door of car, such reckless disregard of plaintiff's safety as was the moral equivalent of an intention to injure plaintiff could not be imputed to brakeman.

**10. Railroads ⬳398(1).**

Verdict denying recovery under count alleging injury by swinging door of railroad car, negligently caused by defendant's agent, aware of plaintiff's peril, *held* supported by weight of evidence.

Appeal from Circuit Court, Fayette County; Ernest Lacy, Judge.

Action by Felix Sprinkle, pro ami, against the St. Louis & San Francisco Railroad Company. Judgment for defendant, and plaintiff appeals. Affirmed.

The plaintiff, a minor 13 years of age, brought this suit by his next friend, V. H. Sprinkle, to recover damages for the loss of his left arm. The complaint was amended by striking all counts originally filed, and substituting in lieu thereof count A, charging subsequent negligence, and count B, charging wanton misconduct of defendant's agents or servants. The defendant filed several pleas, demurrer being sustained to all of them, except the general issue and plea 9 as an answer to count A of the complaint. The court permitted count A to go to the jury, but gave the general affirmative charge as to count B.

Plea 9 to count A is as follows:

"The defendant, for answer to count A, says that plaintiff was near the railroad track of defendant while a freight train was passing, and had full view of the side of the train. Defendant says that, after the negligence of the defendant complained of, the plaintiff was guilty of concurrent or subsequent negligence, in that he saw the door on the car swinging open, and, being conscious of the peril of being struck by said door if he remained within striking distance of said door, negligently remained in a position of peril, to wit, within striking distance of the door, and, as a proximate result, was struck by said door, and thereby received his injuries."

Plaintiff lived about 2 miles from Bazemore, and on the morning of the 22d of October, 1921, he went from his home to a point on defendant's track near Bazemore, and started up the track in route to Glenn Allen for the purpose of getting some school books. When he had gone a distance of about a mile from Bazemore, he was overtaken by said freight train, and as the train approached, he got off the track on the right-hand side of the train in the direction in which it was going; that is, on the engineer's side of the train. He stepped off on a little bridge made of cross ties for the train to pass, said bridge being located a few feet from the heads of the ties that were under the railroad track. Plaintiff stood on this bridge for the train to pass in a sort of diagonal position, with his face turned in the general direction in which the train was going. While he stood there for the train to pass, and as it was passing, some part of the train struck him on the left arm and shoulder, injuring him so severely that he lost his left arm at the shoulder joint.

Plaintiff testified:

"I was standing about 3 feet from the train, standing with my right foot this way, and my left foot that way (indicating). My face was turned directly towards the engine, and I was standing in a sort of diagonal position looking towards the engine. * * * The engine was about three feet from me when it passed me. The side of the engine was about 3 feet from me. It was perfectly safe for the engine to pass me, and far enough for the engine to clear me about 3 feet, and, when the engine passed me, that left 3 feet of clearance between me and it, and it passed on."

Plaintiff claims to have been struck by a loose, swinging door on one of the cars. He testified further:

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"About fifteen cars had passed me at the time I was struck by the door. I did not see the door before it struck me. I was standing on a little old bridge with my right foot and my left foot sort of on the fill there, and the door hit me, and I was looking at the engine at the time. I did not move at the time except I sort of looked up on the car, and, when I looked, the door hit me. After I got off of the track, and took my position there for the train to pass, I did not move backwards from the train or forward towards the train before I was struck. I just stood like I was when I got off."

George McCollum, a witness for plaintiff, testified in part as follows:

"On that day I was working down to the south of Eldridge. Eldridge, I judge, is about 4 or 5 miles from Bazemore. When the train passed me, I was spiking ties. * * * I got out of the way. I saw something unusual about the cars on that train. There was a door open, swinging. It was a refrigerator car door. It was on the side of the train that I was on, and I was on the engineer's side of the train. I was on the right-hand side of the train going in the direction of Winfield."

A. B. Armstrong, a witness for plaintiff, testified in part as follows:

"I was in Bazemore on that morning, and I saw a freight train pass there that morning, going towards Winfield. This was between 8 and 9 o'clock. I saw a door flapping backwards and forwards. That is all I can tell you now. As to the sort of looking door it was, it was just a door is all I can tell you. That car in the train was about half way the train. I guess there were thirty or forty car boxes in the train. I don't know what sort of car it was."

Floyd Colburn, a witness for plaintiff, testified in part as follows:

"I saw something unusual about the doors of that train. The door was loose at the bottom, swinging out and I looked back down the way the train was coming. This door was loose at the bottom. It was just swinging out. It was not loose at the top. The top was fastened. I don't remember whether it was a refrigerator door. It was just a freight train door, a car door. I do know it was fastened at the top and the top was not swinging out, just the bottom swinging some. I don't think a refrigerator door could get loose at the bottom. I would not say there is no way for it to get loose at the bottom. The way that door looked, I would not say it was on a refrigerator car. I don't remember of seeing any refrigerator door loose at the bottom. As well as I remember about it, the door was fastened at the top, and the bottom was loose. I just don't know how far it swung out; it swung out a right smart piece."

The deposition of Arthur Napier, head brakeman on said train, contained the following evidence:

"When I first saw the boy, he was about opposite the center of the tender, where this steel board comes up, rather. This was to my left side. He hadn't done anything when I first saw him except stand there. I did not exactly look around to see him there. You can see both sides of the train from where I was sitting. I was looking south, and he was to my left at that time. The thing that attracted my attention to him standing over there was that I just saw him standing there, and he made a move towards the train. Before he made the move toward the train, I just saw him standing there, that is all, and I remember that, when I saw him make one step, an ordinary step, then I got up and went and stood on the edge of the tank. There was not any door open on that train between Carbon Hill and where this accident happened. I swear to that. I looked up and down the train to see whether any doors were swinging or not on that side that the boy was on. I was looking right at the time this accident happened, and I looked before that in the curves coming out of Bazemore; looked on both sides, and there was not any doors swinging on either side of the train. In the last position I saw him before the accident, he was standing near the track. Yes, sir; I saw him then until after he was hurt. At the time the man in the caboose signalled at Bazemore, I looked around after he had signalled and saw the engineer. The duties of the brakeman are to watch the signals and pass them to the engineer. Some one passed the signals I am talking about at Bazemore. The conductor or brakeman passed it on to me and on to the engineer. There was nowhere else for the engineer to get the signals except from the caboose and from me. I testified in answer to a former question that I was sitting down when I first noticed the boys, but that I stood up to watch them. I had the boys within my view the entire time, from the time I first saw them until the accident. I actually saw the accident about which I have testified."

Eck Tucker, a witness for defendant, testified as follows:

"My name is Eck Tucker, and I know Felix Sprinkle, who is my second cousin, first or second cousin, I reckon it is. I was with him the day he got hurt. * * * He said he was going to catch the local. * * * When the train passed me, I was up there on a little old bridge between Glenn Allen and Bazemore. There was a colored person's house right up on top of the hill. The bridge was on the right-hand side of the track going towards Glenn Allen. In my judgment, the bridge was about ten feet from the ties. We got on that bridge. When we stepped off of the tracks on to the bridge, the train was about 100 yards from us. After I stepped off on that little old bridge, we just stood there on the bridge until the train passed. I say we stood there on the bridge until the train passed—part of it. About half of it had passed before anything was done. We got off of the bridge. While the train was passing, Felix just stepped off of the bridge towards the train; both of us did. He was in front, but I couldn't tell how close he got to the train. I don't know whether I said anything to him or not. It seems like I did. I just don't know. I don't know how far I was from him when he was hit. He was pretty close to the side of the train when he fell; close to it enough that the train knocked him down. I don't know whether he tried to take hold of the train. I don't know whether I saw any car door open or

not. I was scared so bad after he got hurt. I don't remember seeing any car door open."

The testimony of plaintiff's witnesses was that in their judgment the loose car door or doors swing out about 2 to 2½ feet from the car. Defendant's witness Jordan, a railroad employé, familiar with car doors, testified that these car doors were approximately 20 inches wide.

The trial judge gave the general affirmative charge for defendant under the wanton count, and also gave the following written charges requested by defendant:

"A. Unless you are reasonably satisfied from the evidence that the defendant's servants knew of the peril or impending danger of the plaintiff, and failed to exercise due care to avoid injury, and Felix Sprinkle's injuries proximately resulted from that negligence, you must find for the defendant."

"E. There are three elements essential to the existence of actionable negligence: First, the existence of a duty on the part of the defendant to protect the plaintiff from injury; second, failure of defendant to perform the duty; and, third, injury to plaintiff from such failure of defendant. Unless you are reasonably satisfied from the evidence that all of those elements were brought together, and are true, then you cannot find the defendant guilty of any negligence."

The trial resulted in verdict and judgment for defendant, from which plaintiff appeals.

Graham Perdue, of Birmingham, for appellant.

Plea 9, as an answer to count A, was subject to plaintiff's demurrer. Southern R. Co. v. Stewart, 153 Ala. 133, 45 So. 51; Johnson v. Birmingham R., L. & P. Co., 149 Ala. 529, 43 So. 33. Charge A, given at the request of defendant, does not correctly state the measure of duty of defendant's servants after discovery of plaintiff's peril. Central of G. R. Co. v. Ellison, 199 Ala. 571, 75 So. 159. The issue made by Count B should have been submitted to the jury. Southern Ry. v. Shelton, 136 Ala. 191, 34 So. 194; L. & N. R. Co. v. Holland, 173 Ala. 675, 55 So. 1001; Southern R. Co. v. Hyde, 164 Ala. 162, 51 So. 368.

Bankhead & Bankhead, of Jasper, for appellee.

Plaintiff failed to make out a case under the wanton or subsequent negligence count, and was therefore entitled to the affirmative charge. Southern R. Co. v. Hyde, 164 Ala. 162, 51 So. 370; L. & N. R. Co. v. Porter, 196 Ala. 17, 71 So. 335; Southern R. Co. v. Gantt, 210 Ala. 383, 98 So. 196; L. & N. R. Co. v. Rush, 208 Ala. 516, 94 So. 577; Snider v. A. G. S. R. Co., 210 Ala. 119, 97 So. 209.

SOMERVILLE, J. The substance of count A of the complaint is that, "while plaintiff was standing by the side of defendant's track," within reach of the open swinging doors of a refrigerator car in a passing train, he was stricken and injured by one of those doors, and that this resulted proximately from the negligence of defendant's servants or agents, while acting within the line of their employment, in that they "negligently failed to use all the means at their command to prevent said door from striking plaintiff after becoming aware of plaintiff's peril of being struck by said door, when by the use of said means said door would have been prevented from striking plaintiff."

Defendant's special plea 9 sets up continuing contributory negligence on the part of plaintiff, and it is insisted that the demurrer to this plea was erroneously overruled; the objections being, to quote counsel's statement in his brief:

"(1) This plea fails to show that plaintiff committed a negligent act or omission with knowledge of the then present and impending peril of being struck by said swinging door. (2) It is nowhere sufficiently stated therein that plaintiff was conscious of being within the striking distance of said door. (3) The plea fails to assert anything with reference to the proximity of the door to him when it was seen by appellant. (4) It does not appear, except by way of the conclusion of the pleader, that the peril alleged therein was present and impending at the time set out in the said plea."

[1-3] These objections are hypercritical and without merit. It is sufficient to bar his recovery on the case made by his complaint that plaintiff, a mere trespasser on defendant's right of way, saw the out-swinging doors of the car, and voluntarily stood and remained in such proximity to the passing train that he was in danger of being struck thereby, and was conscious of the peril of such a position, and negligently remained therein. This is what the plea in substance alleges, and under our decisions we think it sufficiently shows a concurrent contributory negligence—a knowledge of the specific danger, a knowledge of his exposure thereto by reason of his petition, and a negligent failure to avoid it. Grauer v. A. G. S. R. R. Co., 209 Ala. 568, 572 (4), 96 So. 915; B. R. L. & P. Co. v. Ætna A. & L. Co., 184 Ala. 601, 607, 64 So. 44; C. of Ga. Ry. Co. v. Blackmon, 169 Ala. 304, 311 (plea 3, p. 306), 53 So. 805.

[4, 5] The trial judge, in instructing the jury on subsequent negligence, at defendant's request, predicated liability upon the facts that defendant's servants knew of the peril or impending danger of the plaintiff, "and failed to exercise due care to avoid injury." It is insisted that the quoted clause is an erroneous statement of the duty in question, and should properly have been, "and thereafter negligently failed to exercise due care to avoid injury." The failure to exercise due care, under circumstances imposing the duty to do so, is in itself actionable negligence, and it is not necessary to further

characterize such omission as negligent. Tenn. C. I. & R. R. Co. v. Smith, 171 Ala. 251, 255, 55 So. 170. It is true the instruction lacks completeness, but in that respect, and to that extent, it is unfavorable to defendant rather than to plaintiff. Plaintiff cannot complain of this instruction.

[6, 7] Charge E, given for defendant, is a correct statement of the elements of actionable negligence. Tenn., etc., Co. v. Smith, 171 Ala. 255, 55 So. 170. It could not have been misleading, but, if so regarded, an explanatory charge should have been requested.

[8] A careful analysis of the evidence demonstrates the propriety of the general affirmative charge for defendant on the wanton injury count.

Plaintiff's contention is that defendant's head brakeman, Napier, who was sitting on the tank back of the engine, and who testified that he looked back at the sides of the train before the accident, and saw no doors swinging out, must nevertheless have seen these doors swinging, if plaintiff's witnesses' testimony should be believed as to such an occurrence; and hence, knowing of that condition, and knowing also of plaintiff's proximity to the passing train, he must have been conscious, not only of plaintiff's perilous position, but also of the probability of his being struck by the out-swinging doors.

[9] But the evidence does not tend to show that the doors were out swinging as the car approached plaintiff, and Napier's testimony is that they were not. And, if they were, their greatest reach outward, according to plaintiff's own witnesses, was 2½ feet, and plaintiff's testimony is that he was standing 3 feet from the side of the train. Such a situation, if known to Napier, would not have warned him that an apparently able-bodied young man, who had stepped aside to avoid the passing train, and who, presumptively, could see as well as Napier, and was able to avoid contact with the train, was in imminent peril of being struck, and probably would be struck, unless Napier did something to prevent it. Nor is there anything in the evidence to support an inference that Napier knew that plaintiff was unconscious of danger, if there was any, and that he did not see, and would not avoid being struck, even if he was apparently within reach of the doors. Upon such evidence there could not be imputed to Napier such a reckless disregard of plaintiff's safety as was "the moral equivalent of an intention on his part to injure the plaintiff." B. R. & E. v. Franscomb, 124 Ala. 621, 624, 27 So. 508, 509; Vessel v. S. A. L. Ry. Co., 182 Ala. 589, 62 So. 180; L. & N. R. R. Co. v. Porter, 196 Ala. 17, 71 So. 335.

[10] We think the verdict of the jury was in accord with the overwhelming weight of the evidence, and we find no error for reversal of the judgment.

Affirmed.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.