## BARKER *vs.* COLEMAN.

35   221
124  562

[ACTION FOR BREACH OF WARRANTY OF SOUNDNESS OF SLAVE.]

1. *Hearsay inadmissible.*—The acts and declarations of third persons, not transpiring in the presence, or with the knowledge of a party, are not admissible evidence against him.
2. *Admissibility of slave's declarations while sick.*—The declarations of a slave while sick, as to what had been the matter with him during a previous attack of sickness, not being made to a physician, are not admissible evidence; *secus*, as to his declarations respecting the nature and symptoms of the disease under which he is then suffering.
3. *To what witness may testify.*—A witness may testify to the fact, that a slave was in bad health, diseased, and incapable of doing hard work.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. NAT. COOK.

THIS action was brought by Stephen B. Barker, against F. P. Coleman, to recover damages for a breach of warranty of the soundness of a slave named Henry, who was sold by the defendant to the plaintiff, in November, 1857, at the price of $1,000. On the trial, as appears from the bill of exceptions, the plaintiff read in evidence his bill of sale for the slave, which was in the usual form, and contained an express warranty of soundness; and then offered to prove by one John Dennis, "that he (witness) was one of the appraisers of the estate of Henry Jones,

deceased; and that the boy Henry, here in controversy, was then appraised by the appraisers as 'unsonnd property,' at $600,—being about one-half of what he (witness) would have then said the boy was worth if he had been represented to be sound." The court excluded this evidence, on the defendant's objection, and the plaintiff excepted. The plaintiff then offered the records of the probate court in evidence, "to show that said boy was appraised as unsound; and offered to show that the boy sold at the administrator's sale for $500." The court excluded this evidence, on the defendant's motion, and the plaintiff excepted. The plaintiff then introduced as a witness one J. D. McKellar, who was one of the administrators of Henry Jones, deceased, and offered to prove by him, "that he, as such administrator, sold the said slave, under an order of the probate court of Dallas, at public auction, in 1856; that he represented and sold said slave as unsound; and that John T. Jones, the defendant's vendor, became the purchaser at the sale." The court excluded this evidence, on the defendant's motion, and the plaintiff excepted. The plaintiff then offered to prove, " that the boy sold at said administrator's sale for $500, and that said administrator had paid divers doctors' bills for his sickness while the property of the said estate." The court excluded each part of this evidence, on the defendant's motion, and the plaintiff excepted. The plaintiff then proved by the same witness, " that the slave had a bloated, swollen, sickly appearance, at the time of the sale by him in 1856; and offered to prove the declaration of the boy, as to what had been the matter with him." The court refused to admit this testimony, and the plaintiff excepted. The plaintiff then proposed again to prove by McKellar, that the slave sold at said administrator's sale in 1856 for $500; and excepted to the ruling of the court in excluding the evidence.

" The plaintiff then proved by one Marson, that he hired the said slave, in February or March, 1858, to work on the grading of a railroad by digging dirt and rolling with a wheel-barrow; that the weather was wet and cold, and the slave was much exposed; that he tried the slave

at several things, for five or six days, who soon gave out and became sick, and he returned him to the plaintiff. The plaintiff then proved by Dr. Ulmer, a practicing physician, that he attended the slave in March, 1858, for about ten days; that the boy seemed to be badly put up, and his system was so constructed that he could not stand exposure or hard labor; that from the testimony of Mc-Kellar, and his own observation of the boy, and from the history related to him by the boy, he would say that the boy was diseased, and had been diseased from 1856. When asked his opinion as to the value of the boy, he said that 'he was of very little value, though some dunces might give $500 for him.' The plaintiff then introduced one Gibson as a witness, who testified, that he sometimes traded in negroes; that from what he knew of the boy, together with the testimony of Dr. Ulmer, he would not give anything for the boy without a bill ot sale with warranty; that some persons might be willing to give $500 for him, though he did not think him worth that amount; that the boy would be worth, if sound, $1,100 or $1,200; that he had known the boy ever since plaintiff had owned him, and had lived in plaintiff's employ a part of the time, and had never seen the boy doing any work, except driving a two-horse wagon with brick and sand in it.

"The plaintiff having here closed his testimony, the defendant introduced one Seth Cravy as a witness, who testified, that he lived about two miles from John T. Jones, the defendant's vendor; that said Jones bought said slave in May, 1856, and kept him about six months; that the boy was kept about the house for the first two months, and was then sent out into the field to work, and worked in the plantation; that he had known the boy five or six years, and had never known him to be sick, except just before the administrator's sale at which Jones bought him; and that he did not then know what was the matter with him, except that the boy said it was chills. The plaintiff objected to the testimony; the court overruled the objection, and he excepted. The defendant then introduced W. T. Jones as a witness, who testified, that he lived with J. T. Jones during the time the latter owned

the slave; that he never knew of the slave being sick during that time, except at the time Jones bought him, and two other days from an accidental hurt; that the boy was kept about the house for the first two months after Jones purchased him, and was then sent to the field; that he did good plantation work, and one day rolled logs, which is heavy work, without complaining. The plaintiff objected to this testimony, and, his objection being overruled, excepted. The defendant introduced evidence, also, tending to show that the slave, about the month of September before he was sold to the plaintiff, and while belonging to defendant, was, to all appearances, in good health. He also introduced one Quartermas as a witness, who testified, that he hired the slave from the plaintiff, in April, 1858, to haul manure in a one-horse wagon, which, if well followed, was as hard work as rolling logs; and that the boy did good work.

"The defendant having closed, the plaintiff then offered to prove that the slave had been in bad health ever since he owned him. The court excluded this proof, on the defendant's objection, and the plaintiff excepted. The plaintiff then offered to prove the condition of the slave at the time he bought him, that he was diseased at that time, and that he had been incapable of doing any hard work since he owned him. The court excluded each portion of this evidence, on the defendant's objection, and the plaintiff excepted."

The rulings of the court on the evidence, with the charge to the jury, are now assigned as error.

Thos. H. Lewis, for appellant.

Byrd & Morgan, contra.

A. J. WALKER, C. J.—Of the exceptions to the rulings of the court below, there are several to the exclusion of evidence offered by the plaintiff for the purpose of showing the acts and declarations of third persons, not transpiring in the presence, or with the knowledge of the defendant. Those rulings of the court were manifestly correct.

[2.] There was no error in the rejection of evidence of the slave's declarations, as to what had been the matter with him at a previous time. The proposed declarations were neither made to a physician, nor descriptive of the symptoms and nature of the disease under which he was then laboring. They did not fall within the principle laid down in Rowland v. Walker, 18 Ala. 749; Eckles & Brown v. Bates, 26 ib. 655, and Wilkinson v. Mosely, 30 ib. 562; and they were not admissible in evidence. Blackman v. Johnson, in manuscript.

We understand the witness Seth Cravy, in saying that the slave said he had chills, to mean that the declaration was made in reference to sickness which then afflicted him. That portion of his testimony being thus understood, everything to which he deposed was admissible in evidence. His testimony contributed to show that the slave was sound when purchased by the plaintiff. So, also, the evidence of W. T. Jones, to which the plaintiff objected, was pertinent to the question of the negro's health at the time of the sale, and there was no error in overruling the objection to it.

[3.] That the negro was in bad health, diseased, and incapable of doing hard work, were facts, which may have been obvious to the senses of the witness; and the plaintiff should have been permitted to prove those facts, if he could. It was not proposed to ask the witness for an opinion on the subject. The plaintiff's proposition was, not to prove the opinion of the witness, but, as we understand it, to prove the health of the negro, as learned, like the other facts, through the observation of his senses. If the witness had been interrogated, and had stated his opinion, it would have been proper to have excluded the evidence. We have considered this question in the cases of Milton v. Rowland, 11 Ala. 732; Wilkinson v. Mosely, 30 ib. 562; and Blackman v. Johnson, in manuscript; and the principle settled in them demands the decision, that the court erred in refusing to permit proof that the negro was in bad health, deseased, and incapable of doing hard work.

We need not consider the question raised by the refusal to charge, as the point will not probably again arise.

The judgment of the court below is reversed, and the cause remanded.