# William Ray v. The State.

## Indictment for Grand Larceny.

1. *Declarations denying former admissions, but not forming part of res gestæ.* — When the defendant's admissions or confessions, in a criminal case, have been offered in evidence against him, he cannot be allowed to prove that, when questioned afterwards on the subject, he denied that he had made them, and said that he knew nothing about the matter.

2. *To what witness may testify.* — A witness, testifying to an admission by the defendant in a criminal case, may be asked "whether or not he *supposed* that the defendant *was jesting.*"

3. *Charge as to reasonable doubt.* — A charge to the jury, in a criminal case, instructing them that, "before the defendant can be convicted, the evidence must be such as will exclude every doubt, to that certainty which controls and decides the conduct of men in the highest and most important affairs, and to that moral certainty which excludes every supposition but that of his guilt, and every reasonable doubt," is calculated to confuse and mislead the jury, and is properly refused.

4. *Same.* — A charge asked in a criminal case, in these words : "A reasonable doubt has been defined to be a doubt for which a reason could be given : a probability of the defendant's innocence is a just foundation for a reasonable doubt of his guilt, and therefore for his acquittal," is calculated to confuse and mislead the jury, and is properly refused.[1]

5. *Charge as to credibility of witness impeached or contradicted.* — A charge asked in a criminal case, in these words : "The testimony of a witness for the prosecution, who is shown to be unworthy of credit, is not sufficient to justify a conviction, without corroborating evidence ; and such corroborating evidence, to avail anything, must be a fact tending to show the guilt of the defendant," is calculated to mislead the jury, and is properly refused.[1]

FROM the Criminal Court of Dallas.

Tried before the Hon. GEO. H. CRAIG.

The prisoner in this case was indicted for the larceny of a "gold watch and chain, of the value of more than one hundred dollars, the personal property of Frank Fields;" was con-

---

victed, and sentenced to the penitentiary for two years. On the trial, as the bill of exceptions states, " Frank Fields, colored, was introduced as a witness for the State, and testified, that he was the owner of the watch and chain named in the indictment, which were stolen from him in April, 1873, in said county of Dallas; that the chain was worth one hundred dollars, and the watch fifty dollars ; that the defendant stayed with him about a week before the said property was stolen, and inquired several times, during his stay, as to where witness kept his jewelry ; that he (witness), after repeated inquiries, told him that he kept his jewelry in his trunk, and that the lock of the trunk was broken ; that defendant thereupon suggested that he would repair the lock, but witness replied that he would get a locksmith to repair it ; also, that defendant came to his room one night after this, and tried to get in, but, finding witness in his room, did not come in ; also, that after the loss of the watch and chain, he was asked by said defendant what he intended to do about it, and answered that he had offered seventy-five dollars for its recovery ; that defendant thereupon remarked, such a reward would do no good, as the person who had the property had sense enough to keep it. Witness stated, also, that on several occasions afterwards, while he was conversing with policemen and others about the loss of his watch, he saw defendant watching his movements, and came up to where he was talking, and followed him wherever he went ; also, that said defendant, after his arrest, offered to pay him the value of the watch and chain, if he would not prosecute him ; that defendant, during said conversation, did not deny the stealing, but said he did not take the things from the trunk ; that this was at the mayor's office. Said witness stated, on cross-examination, that he had consulted the ' fortune-tellers ' about the larceny of his watch and chain, and had been advised that a certain woman knew their whereabouts ; that he afterwards charged the said woman with said knowledge, when the defendant approached him, and told him that he accused the woman wrongfully. He denied that he had ever said he saw the watch and chain in the possession of said woman after the larceny, but admitted that he had loaned them to her before the stealing, and said that she had restored them to him before the larceny." Witnesses were afterwards introduced on the part of the defence, who testified to the declarations of said Frank Fields, that he had seen the watch and chain in the possession of this woman two weeks after they had been stolen.

" The prosecution also introduced one John Johnson as a witness, who testified, that in May or June, 1873, he found the defendant in a bar-room in the city of Montgomery, talk-

ing loudly to a crowd of people, and apparently drunk; that
he took said defendant to one side, and informed him that he
had received a letter from Frank Fields, requesting him to
watch him (said defendant), and learn whether or not he had
said watch and chain ; that defendant thereupon said he had
the watch ; and that witness thereupon left him, and did not
see him until the following morning. Said witness stated, on
cross-examination, that he and said defendant were both mem-
bers of a brass band in Selma, and were then in Montgomery
with the band; that the defendant was continually joking, and
making fun, and had won for himself the name of ' clown ; '
and that he could not judge whether the defendant knew of
what he spoke on the night referred to. Thereupon, the
defendant asked said witness, whether he did not suppose the
defendant jested on the night referred to, when he said he had
the watch." The court, on objection made, would not allow
this question to be asked ; and the defendant excepted. " The
defendant then asked said witness, if, from a belief that the
defendant was drunk when he said that he had the watch, he
had not asked him about the watch the next morning, and if
the defendant did not then and there deny all knowledge
thereof, and deny that he had said he had the watch, and say
that he knew nothing about it. On objection to this question,
the court sustained the objection, and would not allow the wit-
ness to answer it ; to all which rulings the defendant excepted."

" The State introduced, also, one John Milhouse as a wit-
ness, who testified, that he had a conversation with said defend-
ant in Montgomery, in which said defendant admitted that he
had said chain, and had sold it to a jeweller, and told witness
to go to a certain jeweller's shop in Montgomery and get it.
Said witness stated, on cross-examination, that the defendant
was a great jester ; that he laughed when witness mentioned
the chain to him, and afterwards admitted the taking and dis-
posing of the said chain. The defendant then asked said wit-
ness, if, on his examination at the preliminary trial of the
defendant, he had not testified that he believed the defendant
was insincere and jesting, in saying that he had the chain, and
had disposed of the same to the said jeweller ; to which ques-
tion said witness answered in the negative."

The defendant requested the court to charge the jury, in
writing, as follows : 1. " Before the defendant can be con-
victed, the evidence must be such as will exclude every doubt,
to that certainty which controls and decides the conduct of
men in the highest and most important affairs, and to that
moral certainty which excludes every supposition but that of
his guilt, and every reasonable doubt." 2. " A reasonable
doubt has been defined to be a doubt for which a reason could

[Ray *v.* State.]

be given : a probability of the defendant's innocence is a just foundation for a reasonable doubt of his guilt, and therefore for his acquittal." 3. " The testimony of a witness for the prosecution, who is shown to be unworthy of credit, is not sufficient to justify a conviction, without corroborating evidence ; and such corroborative evidence, to avail anything, must be a fact tending to show the guilt of the defendant." The court refused each of these charges, and the defendant excepted to their refusal.

The several rulings to which, as above stated, exceptions were reserved by the defendant, are now assigned as error.

REID & MAY, for the prisoner.

BEN. GARDNER, Attorney General, for the State.

B. F. SAFFOLD, J. — The defendant was undoubtedly convicted on his admissions. The evidence, in other respects, tended only to show that he had some opportunity to take the property. In one instance, he was in a bar-room, talking loudly, and apparently drunk ; and on being called aside by a witness, and told that he was requested to watch him, he admitted that he had the watch ; but the witness could not afterwards decide whether the defendant knew of what he spoke at the time referred to. Besides, he was a great jester, and, on this account, was called " clown " by his associates. This witness was asked by the defence, " whether or not he had supposed the defendant jested, when he said he had the watch." The court refused to permit an answer. The witness was also forbidden to answer, whether or not, from a belief that the defendant was drunk at the time of making the admission, he had asked him about it the next morning, when he denied making the admission, and also that he knew anything of the matter.

[1.] The second question called for declarations of the defendant, in his own favor, not constituting part of the *res gestæ*, and not called out by the State. The court rightfully refused to permit it to be answered.

[2.] The first question ought to have been answered. In *Raisler* v. *Springer* (38 Ala. 703), a witness was permitted to testify, that a seizure of property by an officer " was made in an insulting and offensive manner." The manner in which an act is done — whether rude and offensive, or kind and pleasant — was held to be a matter of fact, open to the observation of the senses, to which a witness may legally testify. Words are nothing except in connection with the intention with which they are used, or taken. The *animus* of a look, or other ex-

[Cohen v. State.]

pressions of countenance, is as perceptible to the eye, as words are to the ear, and often much more capable of correct understanding. That this is so, is self-evident.

[3–4.] There was no error in refusing the charges asked. The first was, in effect, that every doubt should be excluded by the evidence, before conviction can be had. It is only "reasonable" doubts which the evidence must exclude. The second is incorrect, in defining a *reasonable doubt* as one for which a *reason* can be given. Every reason, whether based on substantial grounds or not, does not constitute a reasonable doubt in law. The charge was calculated to confuse the jury.

[5.] The last charge was calculated to mislead the jury. An honest misstatement of fact, without corrupt intent, does not make a witness unworthy of credit. The witnesses for the prosecution were not impeached. Contradictory evidence only was given. The charge tended to make the jury believe that the contradiction necessarily destroyed the credibility of the witnesses, so as to require corroboration, without regard to whether any misstatement by them was honest and unintentional, or false and vicious.

The judgment is reversed, and the cause remanded.