(100 South. 657)

**FINCHER v. STATE.    (7 Div. 428.)**

(Supreme Court of Alabama.    May 29, 1924.)

**1. Criminal law ⚖1144(14)—Given charges not in record presumed to cover refused charges.**

Where given charges are not set out in record proper or as a part of the bill of exceptions, it will be presumed that every refused charge appearing in record was substantially covered by written charges which were given.

**2. Criminal law ⚖406(3)—Defendant's statements held admissible as voluntary statements against interest.**

Voluntary statements of defendant while search was being instituted for a girl whom he was charged with having murdered *held* admissible as voluntary statements made against interest.

**3. Criminal law ⚖693—Objection to a question comes too late after question answered.**

Defendant's objection to a question propounded witness in a murder prosecution came too late after question was answered.

**4. Criminal law ⚖448(8)—Witness' statement that stains on defendant's knife looked like blood held admissible.**

Where defendant's knife was in evidence, and there was evidence that deceased was killed by having her throat cut, and there was human blood on defendant's clothing and on his gun, witness' statement that stains on defendant's knife "looked like blood" was admissible.

**5. Criminal law ⚖448(3)—Testimony to be competent must constitute facts and should not declare mental status of another.**

Testimony to be competent must constitute facts, if they are the subject of detailed statement or description, and should not declare merely mental status of another.

**6. Criminal law ⚖448(3)—Witness' testimony as to defendant's statement that "his wife knew there was something wrong with him" held admissible.**

Testimony of a witness that defendant stated to him that "his wife knew that there was something wrong with him," in view of defendant's further statements as to his physical appearance shortly after a murder had been committed and his evasive reply to his wife's inquiry, *held* not inadmissible, as testimony concerning wife's mental status.

**7. Criminal law ⚖1036(1), 1044, 1054(1)—Appellate court could not review evidence admitted after proper predicate laid without objection or exception reserved before answer.**

Appellate court was unable to review for error evidence which was admitted after a proper predicate was laid without objection, or exception reserved before answer, or motion to exclude part of the answer to which exception was reserved.

**8. Criminal law ⚖414, 532(½)—Declarations against interest held prima facie competent and relevant to issue being tried.**

Where the preliminary question before the court as to the relevancy and competency of a confession or declaration against interest by defendant had satisfied court's judgment, its introduction thereafter made the same prima facie competent and relevant to issue being tried.

**9. Criminal law ⚖693—Right to cross-examine before admissions of defendant introduced.**

It is the privilege of defendant's counsel, before defendant's admissions are admitted, to cross-examine witness as to the circumstances under which they were made, and he cannot wait until the question is answered and then move to strike a responsive answer.

**10. Criminal law ⚖412(2)—Defendant's declaration against interest, made on promise of secrecy, held admissible.**

Court did not err in refusing to exclude defendant's declaration against interest made to

---

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

witness on witness' promise of secrecy, such statement not being induced by "flattery of hope" or "torture of fear."

**11. Criminal law ⊂═736(2)—Court must determine whether confession is voluntary before admitting in evidence.**

Prior to admitting a confession in evidence, court must determine whether or not it was voluntarily made.

**12. Criminal law ⊂═741(3)—Where court has determined voluntary character of confession, its sufficiency is for jury.**

Where court has determined voluntary character of a confession, its sufficiency is for jury.

**13. Criminal law ⊂═532(½)—If court is satisfied that all or any part of a confession is true, it should not he rejected.**

If court is satisfied that all or any part of a confession is true, the evidence should not be rejected.

Appeal from Circuit Court, Talladega County; A. P. Agee, Judge.

Gordon Fincher was convicted of murder in the first degree, and appeals. Affirmed.

Marion H. Sims, of Talladega, and Ross Blackmon, of Anniston, for appellant.

The mutual status and cognition of another is not a fact, but matter of opinion or conclusion. A witness would not even be allowed to testify to his own mental state. Bailey v. State, 107 Ala. 153, 18 South. 234; Hill v. State, 137 Ala. 66, 34 South. 406; Stewart v. State, 78 Ala. 436; Brown v. State, 79 Ala. 54; Ball v. Farley, 81 Ala. 295, 1 South. 253; Seams v. State, 84 Ala. 416, 4 South. 521; Lewis v. State, 96 Ala. 10, 11 South. 259, 38 Am. St. Rep. 75; Scott v. State, 96 Ala. 23, 11 South. 193; State v. Tally, 102 Ala. 35, 15 South. 722; Dent v. State, 105 Ala. 17, 17 South. 94; Mobile Fur. Co. v. Little, 108 Ala. 406, 19 South. 443; 14 Cent. Dig. (Cr. Law) § 928. Confessions are prima facie inadmissible; to be admissible they must be voluntary. Where a confession is made upon promise by the party to whom made that it will not be divulged, it is inadmissible. McAlpine v. State, 117 Ala. 100, 23 South. 130; State v. Stallings, 142 Ala. 112, 38 South. 261; Braham v. State, 143 Ala. 28, 38 South. 919; Murphy v. State, 63 Ala. 1; Gregg v. State, 106 Ala. 44, 17 South. 321; Anderson v. State, 104 Ala. 83, 16 South. 108; Owen v. State, 78 Ala. 428, 56 Am. Rep. 40. A confession is restricted to an acknowledgment of guilt. 16 C. J. § 1464.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

Where no objection or exception is taken to a question, a motion to exclude the answer comes too late. Null v. State, 16 Ala. App. 542, 79 South. 678. Proper predicate being laid, what defendant said to the witness was admissible. Jones v. State, 13 Ala. App. 10, 68 South. 690; McKinney v. State, 134 Ala. 134, 32 South. 726; McCullars v. State, 208 Ala. 182, 94 South. 55. Where all charges given for defendant are not in the record, it will be presumed that the given charges covered those refused. Milligan v. State, 208 Ala. 223, 94 South. 169.

THOMAS, J. The conviction was for murder in the first degree, and the death penalty was imposed.

[1] At the outset it may be said that the question argued by counsel to the effect that reversible error was committed in refusing several written charges will not be considered. It will be noted in the oral charge is the recitation:

"In this case the defendant has requested a number of written charges which, under the law, I give to you as a part of the law of the case which it is your duty to consider along with the oral charge with no greater weight, force or dignity."

The given charges are not set out in the record proper or as a part of the bill of exceptions. Where all charges given for defendant are not in the record, those given are presumed to cover all proper phases included in refused charges. It will therefore be presumed that every refused charge appearing in the record was substantially covered by the written charges which were given. Milligan v. State, 208 Ala. 223, 94 South. 169.

The state's evidence tended to show that Miss May Belle McCullars went to the mail box about 9:30 a. m., a distance of a mile from her residence, by a way extending through a field and across a "mountain" covered with a "clump of woods 80 acres across." Not having returned at noon, a search was prosecuted along the way that later in the evening revealed her dead body. Her throat had been cut with a knife, and her body concealed.

[2] When the witness Z. R. Bunn, and others, were arranging to go to the woods in the search, the witness asked another "if he had seen May Belle," eliciting a negative reply; and upon witness' expressing anxiety for the girl's safety, defendant interrupted with the inquiry: "Can I get you to grind my axe on the emery wheel?" Witness testified he told him:

"No, I had to see after that child. I said 'I am uneasy about her,' and he said, 'Can you grind it when you get back,' and I said: 'I do not know the consequence. I have got to find that girl.'"

Thereafter the parties "went across the mountain." Witness testified defendant was there, and further testified:

"The first thing he [defendant] said to me was he heard some dogs running in the woods

⊂═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

up there, and he says 'This afternoon I have heard this back this way.' That is the way it started, and I told him I didn't hear any dogs, and we kept moving on, and we went something like 50 yards again. Me and Mr. Hazel was walking, and he come up with me again, and said: 'I saw May Belle as she went to the mail box this morning, but would not have seen her but for Jeff, her dog. I was looking for crows.' He said he saw some crows and chased the crows on the other end of that point and up by Mrs. Finlay's pasture plumb into Mrs. Hackney's mountains. That was all the conversation we had until after we got to Mr. Wright's. At the time he spoke to me about grinding the axe, he didn't say anything about having seen May Belle. We went on in the woods searching for her. There was nobody besides me and my father and the defendant and Jasper Hazel."

There was no objection to the foregoing evidence. The voluntary nature of the statements as well as the circumstances under which they were made were sufficient to bring that evidence within the rule as to voluntary statements against interest (Heningburg v. State, 153 Ala. 13, 45 South. 246; Washington v. State, 106 Ala. 58, 17 South. 546; Williams v. State, 4 Ala. App. 92, 58 South. 925), if this were necessary.

The same witness testified that later in the evening, when the body was being prepared for burial, defendant "had on a pair of overalls and a brown coat," and did not have on leggins, as he did when witness first saw him that morning, when he was wearing "a jumper overall and overalls and canvas leggins."

Other evidence for the state showed blood stains on the leggins, which a chemical analysis revealed to be human blood. Defendant's evidence explained this appearance of blood on the leggins by the fact that he had cut his hand in hauling wood and so stained his clothing.

[3, 4] The witness Campbell was examined as to the condition of defendant's knife, and stated that it looked a "little bit stained." The solicitor suggested that the statement might be excluded, and, on being excluded and defendant excepting, the solicitor asked: "How did it look?" The witness answered: "It looked like blood." Defendant objected after answer. If it had been available to him so excepting, that objection was too late. However, the knife was in evidence; there was evidence that deceased was killed by having her throat cut; there was human blood on defendant's clothing and on his gun. The condition of the knife was material. There was no error in the witness' shorthand rendition of the fact that "it looked like blood." Barlow v. Hamilton, 151 Ala. 637, 44 South. 658, "I suppose his feelings were hurt;" Ray v. State, 50 Ala. 104, "defendant was jesting;" Jenkins v. State, 82 Ala. 25, 2 South. 150, defendant "appeared like he was mad"; Williams v. State, 149 Ala. 4, 43

South. 720, "from what he saw and in his best judgment it was defendant"; Whistle Bottling Co. v. Searson, 207 Ala. 387, 92 South. 657, "suffered during that time"; Thornton v. State, 113 Ala. 43, 21 South. 356, 59 Am. St. Rep. 97, witness was permitted to say that "defendant looked frightened"; Burton v. State, 107 Ala. 108, 18 South. 284, defendant "looked paler than usual"; Burney v. Torrey, 100 Ala. 157, 14 South. 685, 46 Am. St. Rep. 33, defendant "seemed to be suffering," "looked bad," "was childish," "was simple;" S. & N. Ala. R. R. Co. v. McLendon, 63 Ala. 266, "was not able to," etc.; Jenkins v. State, supra, Carney v. State, 79 Ala. 14, and Long v. Seigel, 177 Ala. 338, 58 South. 380, "bad temper;" Barker v. Coleman, 35 Ala. 221, "was in bad health;" White v. State, 103 Ala. 72, 16 South. 63, "talked with his usual intelligence;" B. R. & E. Co. v. Franscomb, 124 Ala. 621, 27 South. 508, "seemed to be very weak;" L. R. A. 1918A, 721, note.

[5, 6] A witness (Hazel) testified that on the day of the homicide he had met deceased at or near the mail box, returned with her to the point where she turned "off up the road which leads to her father's house"; that this was about 10 o'clock in the morning of the day of her death, and that he saw her no more in life; that when later the witness joined the hunt for the deceased, defendant was present. The proper predicate being laid, the witness, without objection, was permitted to testify that he told defendant what May Belle had said, and that he [defendant] replied:

"Yes, I seen her up there too. I was up there crow hunting when she came along. I wouldn't have seen her if it hadn't been for the dog."

The witness further testified that defendant said he "saw her as she went for the mail" and "talked to her." The witness also testified that "after we got to where she was found" (and before the body was discovered) defendant said "that he would be arrested about that," to which witness replied: "I don't see why; we don't know nothing about the girl." On cross-examination the witness stated:

"Her [deceased's] statement to me compares with the statement Gordon [defendant] made to me. Gordon told me that in view of the fact that I saw her last after she had seen him, and he had seen her, that as he had seen her up there at the tree, that me and him would likely be arrested for that offense, we two boys having seen the girl there in the woods."

The witness further testified, on his redirect examination, that the deceased told him, as they returned from the mail box, that she had seen "Gordon Fincher up there behind a tree and she got scared."

The witness Mrs. Mattie Bunn, after proper predicate was laid, testified substantially

to the same conversation detailed by her husband as having taken place in the jail at Talladega on March 22d. Adverting to the testimony of the witness Z. R. Bunn, the husband of Mrs. Mattie Bunn, after proper predicate had been established as to each conversation detailed, he said:

"When we got in there [the jail at Talladega] on or about the 22d of March, there was present at that conversation Ed Haynes and myself and my wife and the sheriff, Mr. George Burk. When we got in there, Gordon Fincher told my wife that he wanted to talk with her privately. She didn't go out to talk with him privately. Well, he wrote on a paper and stuck it up to the cell and said he wanted to tell what the dead girl said. He said the girl left a message with him for her mother, that May Belle told him to tell her poor mother how she had been treated. He said he had been wanting to tell the truth about the case all the time and they would not let him. * * * He said he had a message that he had been wanting to deliver for a long time and he didn't think his father had treated him right in not letting him tell it. I don't think I heard all that he said to Mrs. Bunn on that occasion; I am sure not. I went there on a subsequent occasion. That was about the 28th of March. Mr. Haynes was all the one that was present at that time."

The bill of exceptions then recites:

"Thereupon, the solicitor asked the witness the following question: 'Tell the jury as near as you can what he said to you on that occasion.' The witness replied: 'On that occasion he told me that his wife didn't know anything more about the murder than I did, except she knew there was something wrong with him when he came off the mountain.' The defendant objected to what he said his wife knew. The court overruled the objection, and the defendant then and there duly excepted."

The ruling on the introduction of this evidence, to which exception was reserved, was as to "what he said his wife knew"—when defendant "came off the mountain." The "occasion" or time to which this confession or declaration against interest by defendant referred, and which was made to the witness Z. R. Bunn, was March 28th, and not to March 22d, when the admission or declaration against interest was made to Mrs. Mattie Bunn and the witness, when Mr. Haynes was present. The bill of exceptions recites that the defendant objected to what he said his wife knew. There was no motion to separate that part of the answer to which objection was indicated from the other statements contained therein. In that connection the witness was permitted to make a statement of the physical facts detailed by defendant and other conversations had with him, as follows:

"He said, about coming off the mountain, he was wet all over, and those eggs he got from Grandpa Bunn's was broke in his pocket, and a red streak across the forehead, and his wife asked him what ailed him, and he said, 'I told her I would tell her later, and that is all I ever told her.' He said he went to Mr. Lawson's and bought some eggs and went home and tried to eat and couldn't eat, and he got up from the table and got his axe and brought it over there, and then he went on and said: 'I didn't bring the axe to get it ground; I just brought it to have an excuse to come.' And I said, 'Why didn't you tell me before, Gordon, she was up there in the stump hole dead?' And he said, 'I wanted to tell you, but something got in my throat and I couldn't talk.'"

The general statement of a rule of evidence is that testimony, to be competent, must constitute facts, if they are the subject of a detailed statement or description, and should not declare merely of a mental status or cognitions of another. The effect of the witness' statement, when considered as a whole, was that defendant had declared to him that when he came off the mountain his wife "knew there was something wrong with him" and "asked him what ailed him." The defendant, in his answer, admitted (inferentially) that there was "something wrong with him" by saying, "I told her I would tell her later, and that is all I ever told her." The physical facts detailed by defendant to the witness, as being apparent to the wife, that were significant, are: He was "wet all over," with the eggs he went to purchase "broke in his pocket," and a "red streak (was) across the forehead." This was sufficient to inform the wife and to cause her to know there was something wrong with defendant as he came off the mountain, or to naturally cause the wife to be "worried," "curious," "excited," or "surprised" thereby to give and express her mental state, deducible by defendant from her appearance, tone of voice, or manner in propounding the inquiry as to "what ailed him," and given statement by him to the witness Z. R. Bunn by way of a shorthand rendition of fact. L. R. A. 1918A, 721, note. That is to say, this answer of the witness Bunn, as to what defendant said of the relevant facts concerning his appearance and the impression that appearance made upon his wife, was in explanation of and as provoking the question and answer indicated. It was within the recognized rules of evidence permitting the statement of an obvious fact by way of a shorthand rendition of fact as related to the unusual physical condition of defendant at the time in question. The whole conversation and admission was necessary and proper to a full understanding of the admission or declaration against interest, "I told her I would tell her later, and that is all I ever told her."

In Carney v. State, 79 Ala. 14, 18, Judge Stone said:

"Human emotions and human passions are not, in themselves, physical entities, susceptible

of proof, as such. Like the atmosphere, the wind, and some acknowledged forces in nature, they are seen only in the effects they produce. Pleasure, pain, joy, sorrow, peace, restlessness, happiness, misery, friendship, enmity, anger, are of this class. So, tenderness, sympathy, rudeness, harshness, contempt, disgust, the outcrop of emotional status, cannot, in their constitution, be made so far physical facts, or entities, as to become the subject of intelligible word description. They are proved by what is called opinion evidence. Not the mere unreasoning opinion, or arbitrary conclusion of the witness, but his opinion, based on experience and observation of the conduct, conversation, and facial expression of others, in similar emotional conditions. Facial expression and vocal intonation are so legible, as that brutes comprehend them; and yet human language has no terms by which they can be dissected, and explained in detail. The reasoning in such cases is a posteriori, and the major proposition is but the sum or resultant of every one's experience and observation."

And in James v. State, 193 Ala. 55, 67, 69 South. 569, 574 (Ann. Cas. 1918B, 119), the recent observation was made:

" * * * Mental emotions, as well as physical sensations, are usually exhibited by facial expressions, and, when relevant, a witness who observed a person's facial expression is generally allowed to say that it indicated any of the ordinary and familiar mental emotions or physical sensations which common knowledge informs us may be thus visibly indicated. * * *"

So also in Woodward Iron Co. v. Spencer, 194 Ala. 285, 69 South. 902, it was held that a witness, after enumerating such as he can of the constituent facts, may state the effect on his mind of the numerous phenomena which constitute the *impression of appearance.*

The stated facts, the effect on the wife, her anxious inquiry, the noncommital or evasive reply of the defendant, was but giving to the jury his impression of appearance at the time, implying an admission of conscious wrongdoing on his part. No mental status of the wife, in the sense dealt with in the law as mere cognition of another, was given by the witness Bunn.

[7, 8] It will be noted that this evidence was admitted, after a proper predicate was laid, without objection; that no exception was reserved before answer, nor was there a motion to exclude part of the answer to which exception was reserved. As to this there is nothing to review. McPherson v. State, 198 Ala. 5, 73 South. 387. The preliminary question before the court, as to the relevancy and competency of the confession or declaration against interest, had satisfied the judgment of the court, and its introduction thereafter made the same prima facie competent and relevant to the issue being tried. Curry v. State, 203 Ala. 239, 242, 82 South. 489, 492, and authorities; McCullars

v. State, 208 Ala. 182, 185, 94 South. 55; McKinney v. State, 134 Ala. 139, 32 South. 726.

In Curry v. State, supra, it is said, of the admission of confessions:

"It is settled law that when a confession is offered in evidence against a defendant in criminal trial, the duty devolves upon the court to ascertain and declare by its ruling whether or not such confession was free and voluntary. When confessions have been admitted as evidence against a defendant's objection, the presumption is in favor of the correctness of the ruling of the trial court, on appeal, and reversal will not be had because of the admission of such evidence, unless the record affirmatively shows that manifest error was committed in the admission of such evidence."

[9] The better preliminary procedure to be observed before the introduction of the admissions of a defendant is thus stated in Willis v. State, 43 Neb. 102, 108, 61 N. W. 254, 256:

"No objection was made to the question propounded to Schmied, nor did counsel cross-examine, nor seek to cross-examine, him before he answered as to whether any threats were made or inducements held out to induce the plaintiff in error to make the statement he did. In the trial of a criminal case, where the state calls a witness for the purpose of proving a confession made by the prisoner, before the witness is allowed to detail such information it is the privilege of defendant's counsel, and the better practice, to cross-examine the witness as to the circumstances under which the confession proposed to be detailed was made. Counsel cannot wait until the witness has answered, and then move to strike the statement from the record, if the answer is responsive to the inquiry."

[10] It is insisted that error was committed in the refusal to exclude evidence, given by Z. R. Bunn, of a confession or declaration against interest by defendant. The witness said:

"Then he went on and said: 'I didn't bring the axe to get it ground. I just brought it to have an excuse to come.'"

There was no objection or exception on the introduction of this evidence. Thereupon the record recites:

"At the time that Gordon talked to me" (witness Z. R. Bunn) "about the axe, Mr. Haynes was present.

"Thereupon counsel for the defendant asked the witness the following question: 'Don't you know that you told Gordon'" (defendant) "'that what he told you in that conversation wouldn't be used, that you would never discuss it in Ed Haynes' presence,'" and that on the witness' examination on a previous occasion he was asked. "'to breach that promise.' The witness answered. 'He did.' * * * 'And he made that statement to you under those conditions, that it would not be used?' The witness answered: 'Yes, sir.' Thereupon counsel for the defendant asked the witness the following question: 'In any trial of the case against him?' The witness replied: 'Yes, sir.'

"Thereupon counsel for the defendant moved the court to exclude from the jury the witness' statement that he told him that carrying the axe was in substance a subterfuge."

The motion to exclude was limited to the statement "that he [defendant] told him [Z. R. Bunn] that carrying the axe was in substance a subterfuge." It is recited in the bill of exceptions that defendant's counsel moved to exclude any reference to the axe. Referring this motion, as it should be, to the specific conversation of defendant with the witness Z. R. Bunn (and Haynes), of March 28th, it went to the admission that defendant did not bring the axe (to witness) to get it ground, but that he "just brought it to have an excuse to come."

The first conversation and circumstances thereof showed the statement was of fact— the request to grind the axe, made before the murder was discovered to have been committed. There was no question that this was competent and voluntary. Washington v. State, 106 Ala. 58, 17 South. 546; Heningburg v. State, 153 Ala. 12, 45 South. 246. The second confession of defendant made no reference to the axe, and was of date of March 22d, while defendant was in jail and where the witness Z. R. Bunn and his wife (and not Haynes) had gone to see him at defendant's request. For this declaration against interest proper predicate was laid. The promise "not to tell" was not made in this second conversation, but was in the third or last conversation, at which Haynes was present. We have heretofore quoted the declaration against interest made to Bunn at the time Haynes was present on or about March 28th.

The statement made the subject of the motion to exclude was part of the conversation of March 28th, alleged to have been induced by a promise of secrecy, which we have already set out, and which was in substance that "defendant did not bring the axe to get it ground, but brought it to have an excuse to come."

The whole conversation, including that part made the subject of the motion to exclude, was admitted after the court had been satisfied by a proper predicate that the declaration against interest was voluntary. Thereafter, on the introduction of this evidence by the state, no cross-examination of the witness Bunn by the defendant was had, testing whether or not the confession was in fact voluntary. The later cross-examination of that witness by the defendant was the first disclosure to the court that a promise of secrecy had been made by Bunn to the defendant in the conversation of March 28th. We make the observation that counsel should not wait (for such cross-examination) until a witness has answered as to a confession, and rely alone upon a motion to strike his statements from the record.

[11, 12] It is unnecessary to remark that prior to permitting a confession in evidence, the duty is placed by law upon the court to determine whether or not it was voluntarily made. Miller v. State, 40 Ala. 54; Bradford v. State, 104 Ala. 68, 16 South. 107, 53 Am. St. Rep. 24; Curry v. State, 203 Ala. 239, 82 South. 489. Such preliminary question being determined and the evidence held prima facie admissible, its sufficiency is for the jury. This is illustrated by our decision that it is proper to refuse charges instructing the jury that such confession may be disregarded if it is not believed to have been voluntarily made. Scott v. State (Ala. Sup.) 100 South. 211; [1] Smith v. State, 137 Ala. 22, 34 South. 396; Huffman v. State, 130 Ala. 89, 30 South. 394; Stone v. State, 105 Ala. 60, 17 South. 114; Brown v. State, 124 Ala. 76, 27 South. 250, 18 L. R. A. (N. S.) 872; State v. Dick, 60 N. C. 440, 86 Am. Dec. 439; 16 C. J. p. 1003, § 2421.

In Owen v. State, 78 Ala. 425, 428 (56 Am. Rep. 40), Judge Stone said:

"Any, the slightest menace, or threat, or any hope engendered or encouraged that the prisoner's case will be lightened, meliorated, or more favorably dealt with, if he will confess—either of these is enough to exclude the confession thereby superinduced."

It is also declared by this court that if a confession was procured, not by menace, threat, or hope, but by the mere employment of falsehood on the part of officers or "other persons," such falsehood "does not alone exclude it" (Curry v. State, 203 Ala. 239, 242, 82 South. 489; Burton v. State, 107 Ala. 108, 18 South. 284; Stone v. State, 105 Ala. 60, 69, 18 South. 114; Levison v. State, 54 Ala. 520, 525; King v. State, 40 Ala. 314; 1 Greenl. Ev., §§ 322, 323, 329); nor does the fact that a confession was obtained by artifice alone exclude it (Brindley v. State, 193 Ala. 43, 69 South. 536, Ann. Cas. 1916E, 177). It is only when such falsehood or artifice amounts to a promise of favor or threat of punishment. Where these have not been employed, the confession is admissible. Levison v. State, 54 Ala. 520, 525; 16 C. J., p. 729, § 1497.

[13] We have indicated that the mere promise of secrecy that was made to the defendant as to the confession about grinding the axe (however reprehensible to disregard it) was not within the long-recognized rule governing the exclusion of involuntary confessions made by a defendant. The reason is that such a mere promise did not impair the "testimonial worthiness" of the confession. If the court is satisfied, in a given case, that all or any part of a confession is true, the evidence should not be rejected. Wilson v. State, 19 Ga. App. 759, 766, 92 S. E. 309. This is given illustration in our decisions to the effect that when a defendant was merely admonished that it would be best to tell the truth about the matter (Huffman v. State,

<hr />

[1] Ante, p. 270.

130 Ala. 89, 30 South. 394), or when the confession leads to the discovery of physical facts of testimonial worthiness (Curry v. State, 203 Ala. 239, 242, 82 South. 489) disclosing extraneous facts to show the truth of the statement, and tending to prove the commission of the crime, etc., such evidence was admissible. It follows that a mere promise of secrecy, which does not amount to a promise not to prosecute if a confession is made (Porter v. State, 55 Ala. 95; Murphy v. State, 63 Ala. 1; Meadows v. State, 136 Ala. 67, 34 South. 183; note, Warickshall's Case, No. 127, 1 Leach's Crown Cases 299), does not render the confession involuntary.

This is in accord with the rule of the textbooks. Mr. Wharton says that a mere promise of secrecy cannot be held an inducing promise, as on the assurance of secrecy the accused "would be inclined rather to state the truth than a falsehood." 2 Wharton's Crim. Ev. (10th Ed.), § 647; State v. Darnell (Del.) Houst. Cr. Cas. 321; Lawson v. State (Tex. Cr. App.) 50 S. W. 345; State v. Novak, 109 Iowa, 717, 79 N. W. 465; State v. Squires, 48 N. H. 364; Rutherford v. Com., 2 Metc. (Ky.) 387; State v. Mitchell, 61 N. C. 447; Morris v. State, 39 Tex. Cr. R. 371, 46 S. W. 253; Wilson v. State, 19 Ga. App. 759, 92 S. E. 309. See, also, 1 Greenl. on Ev. (16th Ed.) § 220: 1 Wigmore on Ev. § 832; 2 Bishop's New Crim. Proc. § 1227; Huffman v. State, 130 Ala. 89, 30 South. 394; Kelly v. State, 72 Ala. 244; Aaron v. State, 37 Ala. 106; Curry v. State, 203 Ala. 239, 242, 82 South. 489.

It is the rule of the common law that the mere promise of secrecy did not render a confession involuntary, since such promise was not "calculated to make his [defendant's] confession an untrue one," and "must have had a contrary tendency." The well-recognized distinction was made in the English case of Rex v. Thomas et al., 6 Carrington & Payne's Reports, 353 (Eng. 1834), Patterson, J., where the hope held out to the defendant was, "You had better split, and not suffer for all of them," and this rendered the statement inadmissible. On the other hand, the statement to the prisoner in Rex v. Lloyd, 6 Carrington & Payne's Reports, 393 (Eng. 1834), Patterson, J., was where A. and his wife were separately in custody on a charge of receiving stolen property. A person in the room said to the prisoner, A., "I hope you will tell, because Mrs. G. can ill afford to lose the money," and the constable added, "If you will tell where the property is, you shall see your wife." The statement of the prisoner, A., was admissible in evidence. To the same effect was Rex v. Shaw, 6 Carrington & Payne's Reports, 372 (Eng. 1834), Patterson, J., where A. was in custody, and a fellow prisoner said, "I wish you would tell me how you murdered the boy, pray split" ("split" being an English colloquialism meaning to tell, con-

fess). A. replied, "Will you be upon your oath not to mention what I tell you?" B., the fellow prisoner, went upon his oath that he would not tell, and A. then made a statement; and it was held not such an inducement to confess as to render the statement inadmissible. In Rex v. Thomas, 7 Carrington & Payne's Report, 345 (Eng. 1836), a witness stated to the prisoner that he had better not confess, "but that the prisoner might say what he had to say to him, for it should go no further." The prisoner's statement was received in evidence on the trial.

The reason of this rule is stated by Mr. Chief Justice Shaw in Commonwealth v. Morey, 1 Gray (Mass.) 462:

"The ground on which confessions made by a party accused, *under promises of favor*, or *threats of injury*, are excluded as incompetent, is, *not because any wrong is done to the accused, in using them*, but because he may be induced, by the pressure of hope or fear, to admit facts unfavorable to him, without regard to their truth, in order to obtain the *promised relief*, or *avoid the threatened danger*. * * *" (Italics supplied.)

And the rule is more tersely stated by Mr. Greenleaf, from Mr. Baron Eyre's declaration that a confession forced from the mind "by the flattery of hope, or by the torture of fear, comes in so questionable a shape, when it is to be considered as the evidence of guilt, that no credit ought to be given to it." Warickshall's Case, No. 127; 1783, 1 Leach's Crown Cases, 298; 1 Greenl. on Ev. (16th Ed.) § 218, p. 353.

Hence it has ever been held that a mere promise of secrecy does not taint the confession made by a defendant, if it was not induced by the "flattery of hope" or the "torture of fear." No such flattery of hope or torture of fear induced the statement of this defendant that he carried the axe as a subterfuge.

The judgment of the circuit court is affirmed.

Affirmed.

All the Justices concur.

