74 So.2d 487

**John H. McCRAY, Jr.,**

v.

**STATE.**

**1 Div. 664.**

Court of Appeals of Alabama.

Nov. 10, 1953.

Rehearing Denied Dec. 1, 1953.

Reversed on Mandate Aug. 31, 1954.

Harry Seale, M. A. Marsal, Mobile, for appellant.

662

Si Garrett, Atty. Gen., Maury D. Smith, Asst. Atty. Gen., for the State.

PRICE, Judge.

Appellant, under an indictment charging murder, was convicted of manslaughter in the first degree for the killing of his baby son. His punishment was fixed at five years imprisonment in the penitentiary.

Defendant, a Negro sergeant in the Air Force, stationed at Brookley Field, served as orderly to General Martenstein, the Base Commanding Officer. He lived with his wife, Lorraine, and their fourteen months old son, John H. McCray, 3rd, in an apartment in a colored community in Mobile.

Defendant's wife testified for the State. Her testimony tends to show that defendant returned home around 6:00 P.M. Saturday, January 26, 1952, from a trip across town to borrow some money, which he failed to get. He had been drinking a little. She fixed his dinner and after he had eaten he went into the next room and sat on the bed and called the baby to him. In the words of the witness: "The baby walked slow to him and he turned around and he looked back in the kitchen to me and so I said to John, I said leave him alone, I says go and lay down and I will wake you up at ten o'clock, you see the baby doesn't want to come to you, so by the time I got out the words, he slapped the baby back down on the floor * * * he slapped him hard enough for him to lay flat back on the floor * * * I ran and grabbed the baby up in my arms and I told him, I said leave him alone, I says you are always bothering him, why don't you leave him alone; so then he slapped me back and I fell right back on the bed and then he grabbed the baby out of my arms and up in the air and down on the floor like that * * *." The baby was rushed to the hospital and died in a short time.

The witness stated, over objection and exception, that on the way to the hospital, and again while they were waiting for the arrival of General and Mrs. Martenstein, the defendant told her not to tell exactly what happened as it would mess up his career. There was no error in permitting the witness to so testify. The acts, declarations and conduct of the accused, against interest, are always competent. Woodward v. State, 253 Ala. 259, 44 So.2d 241. The witness further testified defendant told the doctors and the General he was playing with the baby and threw him up in the air and missed him. She admitted she told her aunt in New York in a telephone conversation from the General's residence that John was playing with the baby and missed him.

Nelson Grubbs, a toxicologist in the State Department of Toxicology and Criminal Investigation, testified he performed an autopsy on the child. An external examination revealed no wounds on the outside of the body.

An incision was made from in front of one ear around the back of the head and over the other ear, and the flap of scalp moved forward. " * * * there was a large bruise over the frontal bone in the frontal area; there were five lesser bruises above the top of the frontal bone extending to the parietal bone * * * at the back of the head, over the back side of the parietal bone, there was another large bruise * * *. The head was split open

into two halves, that is that it was fractured from the forum magnum, that is the large hole in the base of the skull where the spinal cord and the back bone joins on to the skull, up through the occipital bone to the suture line between the two parietal halves, and that was separated down to the frontal bone, which was separated down to the nasal bone, and it was laid open; the dura, or the sack which the brain is included in, enclosed in, was split along this parietal suture, and there was a massive hemorrhage in the brain at this suture and back into the basal area of the brain."

This hemorrhage to the brain caused the child's death.

Paul Buck, a City Detective, testified he reduced to writing a statement made by defendant at the police station on January 28. Detective Slade, Major Webber, Mr. Marco and another man whose name he could not remember were also present. The last named three were investigators from Brookley Field. A statement by Lorraine McCray was read to defendant and he admitted everything in the statement was true, except he did not eat anything. After defendant's statement was typed he was given a copy of it and Major Webber read it to him.

Defendant's counsel was permitted to cross-examine the witness before the statement was introduced in evidence.

The witness stated defendant said some things not pertaining to the case which were not included in the statement. To the best of his knowledge defendant said he pitched the baby up and it fell down. The Major was not in uniform but his rank was made known to defendant. Witness believed the Major advised defendant it would be all right for him to sign the statement when it was read.

In response to questioning of the Solicitor the witness stated he put in the statement what defendant told him and he had not read the statement since he took it and did not recall all that was in it.

In the statement, which is set out fully in the record, the defendant admitted he grabbed the child's feet and hit its head against the floor.

The defendant as a witness in his own behalf, testified the killing was the result of an accident. He stated he was playing with the baby and "tossed him up in the air like all fathers do their sons, kids, I tossed him up in the air and the baby fell on its head on the floor * * * I just couldn't catch him coming down, I guess it happened because I was drinking, I missed him when he come down out of the air and he hit the floor and my wife was sitting on the bed and she picked the baby up and ran outside the house." He insisted he loved his baby and the baby loved him. He denied slapping his wife or the child and said he did not remember snatching the baby from his wife's arms or pushing her back on the bed. He denied telling his wife at any time to make untrue statements and said he made the same statement at the police station that he made on the witness stand.

Several witnesses, including General Martenstein and the base chaplain, testified to defendant's good reputation.

Appellant's counsel strongly urges that the trial court erred in refusing a new trial because the overwhelming weight of the evidence was against the verdict. He bases this argument mainly on account of the fact that Lorraine McCray told witnesses immediately after the baby was hurt that defendant was playing with him and then changed her story the next day; because the officers failed to include in the written confession defendant's entire statement, and Major Webber, after reading it, told defendant it was all right for him to sign it.

It is not insisted the confession was not shown to have been free and voluntary. In fact, when the Solicitor started to lay the predicate for its admission defense counsel remarked, "You needn't qualify him."

The objection made to the introduction of the confession was that it was not a full and complete statement but material matters had been omitted and as writ-

ten it was calculated to injure defendant. The court stated: "I will permit the reading of it and the testimony taken with it as testified by the witness, of certain statements he did make in addition, to be considered by the jury." In this there was no error. The credibility and the weight to be accorded such evidence were questions for the jury. Johnson v. State, 242 Ala. 278, 5 So.2d 632; Fincher v. State, 211 Ala. 388, 100 So. 657; Phillips v. State, 248 Ala. 510, 28 So.2d 542; Taylor v. State, 249 Ala. 130, 30 So.2d 256.

■ The evidence, being in sharp conflict, presented questions for the determination of the jury, and after allowing all reasonable presumptions in favor of the correctness of the verdict, we are not convinced the preponderance of the evidence against it is so decided as to render it palpably wrong and unjust. Cobb v. Malone, 92 Ala. 630, 9 So. 738. There was no error in the court's refusal to grant the motion for a new trial.

■ The second proposition argued by counsel has reference to the following remarks by the tral judge in response to questions by a juror during deliberation:

"Juror: Judge, your Honor, the jury seems to be anxious to get some information on matters; if a man is sentenced for a certain number of years, how would a parole and given time apply, on a certain number of years, say five, ten or to whatever the sentence might come, from there on up?

"By the court: That is a matter purely with the Parole Board. It is generally customary for them to allow a man a third of the time, but the rules change every day with them.

"By Mr. Seale: We respectfully except to the court's construction on that, because Mr. Booth, I think, will tell you what the Courts have held * * *

"By the court: That what, I didn't catch the last statement.

"By Mr. Seale: I merely wish to except to the Court's statement with respect to parole. I am sorry.

"By the court: That's all; that's the law. It is purely up to the Parole Board under the law. That's all I can say.

"Juror: There is no way for you, Judge, to define what the probabilities would be?

"By the court: No sir.

"Juror: I see; just as a juror, is there any particular rule that they follow?

"By the court: Not a thing.

"Juror: No established practice. Thank you, Judge."

We find no merit in appellant's contention that these statements by the court constitute reversible error.

Our courts have held in numerous cases that refused charge 6 asserted a correct rule of law and, where applicable, its refusal constituted reversible error. Clayton v. State, 23 Ala.App. 150, 123 So. 250, certiorari denied 220 Ala. 39, 123 So. 236; Stinson v. State, 10 Ala.App. 110, 64 So. 507; Branch v. State, 10 Ala.App. 94, 64 So. 507; Lovelady v. State, 24 Ala.App. 502, 136 So. 871; Stafford v. State, 33 Ala. App. 163, 31 So.2d 146; Burkett v. State, 154 Ala. 19, 45 So. 682; Adams v. State, 175 Ala. 8, 57 So. 591. In Morris v. State, 252 Ala. 607, 42 So.2d 600, it was held to be argumentative and misleading under the decision of the court in Fancher v. State, 217 Ala. 700, 117 So. 423.

■ In the case at bar when informed of her statutory privilege not to become a witness against her husband, defendant's wife elected to testify. On cross examination she stated she wanted to testify against him; she hated him now and wanted to do anything in the world to get rid of him. Therefore, by her own admission, she was prejudiced against the defendant. However, no such contention was made as to the other State's witnesses, and under the holding in Naugher v. State, 6 Ala.App. 3, 60 So. 458, if for no other reason, the charge was properly refused.

Other charges refused to defendant, which assert correct propositions of law, were substantially covered by the court in its oral charge.

There being no reversible error in the record, the judgment of the trial court is affirmed.

Affirmed.

PER CURIAM.

Reversed and remanded on authority of McCray v. State, 261 Ala. 275, 74 So.2d 491.